## Leadingham v. Commonwealth.

(Decided March 19, 1918.)

### Appeal from Carter Circuit Court.

1. Homicide—Appeal and Error—Verdict Against Evidence.—In a prosecution for homicide, where there is conflicting evidence that accused fired the shot that killed deceased, the question of his guilt is for the jury, and a reversal of the judgment of conviction upon the ground that the verdict is against the weight of the evidence is not authorized.

2. Criminal Law—Appeal and Error—Misconduct of Judge.—In such prosecution, alleged misconduct of the trial judge in reprimanding defendant's witness in the presence of the jury can not be considered on appeal, where the same does not appear in the record other than in the motion and grounds for a new trial.

3. Homicide—Appeal and Error—Instructions.—Where in a separate trial under joint indictment for homicide, the evidence was circumstantial and slight that three of accused's co-defendants were present for the purpose of aiding and abetting the killing, it was not prejudicial to include them in instructions upon the question of aiding and abetting.

4. Appeal and Error—Review—Evidence.—A statement of the court in reference to evidence heard upon the trial not incorporated in the bill of exceptions can not be considered upon appeal.

5. Criminal Law—New Trial—Misconduct of Juror.—The defendant having proved on motion for a new trial that he had discovered, after verdict, that one of the jurors was related by blood in the third degree to deceased and the Commonwealth having failed to prove that the juror was ignorant of his relationship to deceased, the defendant was entitled to a new trial.

6. Criminal Law—New Trial—Misconduct of Juror.—A defendant, convicted of homicide, is entitled to a new trial for misconduct of juror, who qualified and served without disclosing that he had previously formed and expressed an opinion that defendant was guilty, where the affidavit setting up this fact was not controverted by the Commonwealth.

THEOBALD & THEOBALD for appellant.

CHARLES H. MORRIS, Attorney General, and D. M. HOWERTON, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On Saturday night, May 19, 1917, services were held in a church situated on Greenbrier creek at the mouth of Rice branch in Carter county. Lafe Kitchen lived with his mother and father about 400 yards from the church up Greenbrier creek and, as he was returning home from church in company with his fourteen year old nephew, Durel Kitchen, he was shot and killed.

Charging them with murder, the appellant, Asa Leadingham, Charles Bonar, John Yates, John Pennington and Jess Pennington were indicted, it being alleged in the indictment that each did the shooting, and that each was present for the purpose, and did encourage, assist, aid and abet the others. Appellant was separately tried, convicted, and sentenced to imprisonment in the penitentiary for twenty-one years, and he appeals.

The grounds relied upon for reversal are: (1) that the verdict is against the evidence; (2) that it was prejudicial error for the court to reprimand defendant's witness, Sam Justice, in the presence of the jury; (3) that the instructions are erroneous; and, (4) misconduct of jurors, Orcutt and Riggs.

The first and second grounds are clearly without merit, and may be disposed of briefly.

1. Two witnesses to the homicide testified that appellant fired the shot that killed the deceased, while appellant and three of those indicted with him testified he did not fire the shot, but that it was fired by Charles Bonar. Under this testimony, the guilt of appellant was clearly for the jury and we would not be authorized to reverse the judgment upon the ground that the verdict is against the weight of the evidence.

2. That appellant's witness, Sam Justice, was reprimanded by the court in the presence of the jury for his absence at a former term of court does not appear in the bill of exceptions or in any way in the record, except in the motion and grounds for a new trial; hence, no question in reference thereto is before us for consideration.

3. The instructions given are literally copies, except as to names, dates, etc., of the instructions approved by this court in Watkins v. Commonwealth, 123 Ky. 817, but appellant insists that, under the evidence here, such instructions were inapplicable, because there

was no evidence that any of the defendants was present for the purpose, or did, aid or abet any one in the killing of Kitchen; that the sole issue upon the evidence was whether or not appellant was guilty of murder; and that consequently instructions upon the questions of abettors, voluntary manslaughter, and self-defense were erroneous and prejudicial, because affording an opportunity to the jury, by compromise, to convict him, either as principal or as accessory, of a lesser offense than murder, without proof of any offense but murder, or any proof that he or any defendant was aiding or abetting the one who did the killing.

It was proved, without contradiction, that defendant, his co-defendants, and three others came to the church from their homes on Rice branch; that all of them had been drinking; that there are two traveled roads connecting their homes with the church, the shorter one following Rice branch and the other one striking Greenbrier creek above where Lafe Kitchen lived and thence down the creek past his house to the church; that in going to the church that night, some of appellant's party traveled one road and some the other; those going by the home of Kitchen, of whom appellant was one, invited Kitchen to accompany them to church, and he did so; that on the way to church and before Kitchen joined them, Charles Bonar fired his pistol a number of times and appellant fired it once; that after Kitchen joined them, he and appellant engaged in an angry discussion with reference to deceased's wife. The Commonwealth also proved that, while the services were in progress, this difficulty was renewed a time or two between deceased and different members of appellant's party. In one of these difficulties, Kitchen was heard to say to John Pennington, in the presence of the other defendants, ''You fellows don't need to think you can come over here and run this creek;'' that Pennington said that they were not trying to run the creek; and some one else said, ''If you mean to fight, why don't you fight and have no more words about it;'' that Charles Bonar said to another member of the party, ''Let's get Sam Justice's gun, but his snaps and ours don't snap,'' and to Willie McDavid, ''When they run me, they run hell;'' that appellant and members of his party were misbehaving in and out of the church and were together most all the time; that when the services were over, appellant and his

party left the church house together and started up the
Rice branch road toward their homes; that they went
but a short distance in that direction when they stopped,
held a short conversation, turned around, came back
and started up Greenbrier road, which led past Kit-
chen's home; that in about two minutes after they had
started up the Greenbrier road, Lafe Kitchen and his
nephew, Durel Kitchen, started home and in about 200
yards overtook appellant's party, who were either walk-
ing slowly or had stopped, when deceased said to John
Pennington, "John Yates is long for this world if he
died tomorrow," and appellant said, "By G—d, John
Yates is my cousin and you can't talk about him that
way;" that deceased said he could whip the whole bunch
in a fair fist fight; that appellant was clicking a pistol
or knife which deceased thought was a knife and said,
he wasn't afraid of the knife, and appellant said he did
not have any knife; that deceased turned from appel-
lant and started toward a rail fence at the side of the
road, looking back over his shoulder toward appellant
and four of his associates who had remained at the place
of the killing, the other three having proceeded up
Greenbrier creek; that the five who had remained
started running back down Greenbrier when deceased
started toward the fence; that when they had gone about
ten feet appellant shot and killed deceased; that the five
defendants then ran down the road toward the church,
and when near the church jumped over the fence and
ran through the fields and woods and proceeded up Rice
branch to their homes. The three who went on ahead
when the difficulty started, heard the shots and heard
Durel Kitchen say that his uncle had been killed and
did not go back to the place of the killing, but proceeded
on up the Greenbrier road to their homes; and that none
of the parties mentioned to any one that Kitchen had
been killed until next day.

The witnesses for the defendant admitted having
whiskey and that they had been drinking, but denied
that they were drunk or under the influence of whiskey,
and corroborated the testimony of witnesses for the
Commonwealth as to the difficulty of different members
of appellant's party with deceased preceding the one in
which he was killed. They also agreed with the wit-
nesses for the Commonwealth, in substance, as to the
statements and occurrences that immediately preceded
the killing, but they denied they first started home on

the Rice branch road and testified that it was Charles Bonar and not appellant who shot and killed deceased. One of defendant's witnesses testified that deceased, just before he was killed, jumped over to the fence at the side of the road and took hold of a rail. This testimony was certainly sufficient to authorize and demand an instruction upon murder, manslaughter and self-defence, because from it it might reasonably be inferred, if defendant shot deceased, he did so either maliciously or in sudden heat and passion; and while the evidence that it was done in self-defense was very slight, the testimony that while deceased and appellant were cursing each other deceased jumped to the side of the road and took hold of a rail just before he was shot is some evidence, at least, that might have warranted the belief upon the part of defendant that he was about to be attacked by deceased; and it is quite possible that if the court had failed to give the self-defense instruction, the omission would have been grounds for complaint on appeal by defendant. While the evidence is circumstantial and slight that defendants, other than appellant and Charles Bonar, were present for the purpose of giving aid and assistance in the killing, and if they were objecting to the giving of such an instruction, there might be some question, or at least room for argument, about the propriety of giving of such an instruction; but as to appellant and Charles Bonar, the evidence was ample to warrant instructions upon the question of aiding and abetting, and whether or not it was error to have included the three other defendants in such instructions, it was at least not prejudicial to appellant and he is not entitled to a reversal because of the instructions given, although, upon his separate trial, it would have been better to have confined the instructions to appellant and Charles Bonar, one or the other of whom certainly killed deceased, and there was ample evidence upon which to base an instruction warranting a conviction of the one that did not fire the shot of having aided and abetted the other. See True v. Commonwealth, 90 Ky. 651; Plummer v. Commonwealth, 1 Bush 76; Gambrell v. Commonwealth, 130 Ky. 513.

4. The misconduct of the jurors complained of is that juror, Orcutt, qualified and served as juror without disclosing the fact that he was related by blood to the deceased, their mothers being first cousins; and that the juror, Riggs, qualified and served without disclosing

the fact that he had formed and expressed an opinion that appellant was guilty. In support of his motion and grounds for a new trial, appellant filed his affidavit that he did not know, and could not have known by the exercise of reasonable diligence, of the disqualification of either of these jurors until after verdict. He also filed affidavits of others proving the relationship between Orcutt and deceased, and that Riggs had expressed an opinion, soon after the killing, that appellant was guilty and ought to be put on the firing line in Germany. The Commonwealth did not file the affidavits of either juror or of any one else, so it stands confessed in the record that, of the jury who tried and convicted appellant, one was related by blood in the third degree to deceased, and another had previously expressed the opinion that appellant was guilty of the crime of which he was charged.

Appellant is clearly entitled to a reversal upon this ground unless, as a matter of fact, Orcutt was ignorant of his relationship to the deceased (Miracle v. Commonwealth, 148 Ky. 453), and unless Riggs, in spite of his previously formed and expressed opinion of appellant's guilt, qualified by stating upon his *voir dire* examination as provided in section 207, Criminal Code, under oath that he believed he could fairly and impartially render a verdict in accordance with the law and the evidence.

In overruling appellant's motion and grounds for a new trial, the court incorporated in the order the following:

"With reference to the alleged relationship of the juror, H. M. Orcutt, to said Lafe Kitchen, it is sufficient to say that when said juror was under examination by counsel both for the Commonwealth and defendant, testing his fitness and qualifications to serve as a juror in this case, that said juror was critically and thoroughly examined and questioned, in the presence of the court, as to whether or not he was related, either by blood or marriage to any of the parties mentioned in this case, including the deceased, Lafe Kitchen, and he stated under his oath that he was not, at least if he was he did not know it or recognize any relationship with any of said parties whatever; and from that time until the trial was completed and the verdict of the jury returned to the court nothing was said or in any way occurred that would in any manner indicate that said Orcutt was

related to said Kitchen, or any of the parties named in the indictment; but the court is clearly of the opinion that he did not know of such relationship if any existed, that he was in no way influenced by said alleged relation-ship and the court being satisfied that the defendant has had a fair and impartial trial said motion and grounds are now overruled.''

This statement of the court, if of any effect what-ever, is evidentiary in character and if considered by us must be accepted in lieu of evidence which does other-wise appear in the record. When it was made to ap-pear by the defendant that the juror, Orcutt, was so re-lated to the deceased as to disqualify him as a juror on the trial of defendant, the burden shifted to the Com-monwealth to overcome this presumption by evidence that the juror was ignorant of the relationship, which to be considered here must be found in the bill of evi-dence. There is no such evidence in the bill of excep-tions, which includes the stenographer's transcript of the evidence, and we are quite sure the court can not supply the deficiency by a statement of facts in his judgment that is not warranted by any evidence in the record, even though such evidence may have been pro-duced upon the trial, as we are limited to a considera-tion of such evidence as appears in the record in the regular and prescribed way.

This court in Bennett v. Commonwealth, 171 Ky. 63, recently refused to consider a statement made by the court contradictory of the bill of evidence, saying, ''We can not consider the statement of the trial court as to his recollection of the testimony against the officially certified transcript thereof found in the bill of excep-tions.''

Upon the same question, this court in Common-wealth v. Patterson, 10 Ky. L. R. 167, 8 S. W. 694, said:

''If the bill of exceptions correctly set forth the evi-dence it was the judge's duty to sign it. If it did not correctly set forth the evidence, it was the duty of the court to correct it so as to make it conform to the truth and then sign it. This he did, and having done so, the bill of exceptions became an official paper, and the only official paper we consider. His subsequent written statement was unauthorized and unofficial. Therefore, we cannot consider any statement made in it.''

It, therefore, results that it does not appear from the record that juror, Orcutt, was ignorant of his relationship to deceased.

It is stated in the affidavit of defendant filed in support of his motion for a new trial: "That he did not know that the juryman, Davy Riggs, had expressed an opinion as to his guilt or innocence of the charge complained of in the indictment, or that he made any statement whatever in regard thereto, having relied upon the statement of said Riggs under oath at the time of his examination for jury service herein, that he had not either formed or expressed an opinion thereon, that he did not know until this date that the said Riggs had expressed an opinion thereon." This is a statement, in substance, that the juror, Riggs, when being examined as to his qualifications, was asked and that he denied that he had either formed or expressed an opinion, and this is not in any way controverted. It is also proven by the affidavits of three witnesses, which likewise are uncontroverted, that Riggs had, in their presence, a short time after the killing and before the trial, stated that the defendant was guilty and ought to be put upon the firing line in Germany. It is, therefore, made to appear upon the record that the juror, Riggs, had both formed and expressed an opinion as to defendant's guilt and qualified for service by denying that he had either formed or expressed an opinion.

In Mansfield v. Commonwealth, 163 Ky. 488, where, upon motion for a new trial, a juror was accused of having formed and expressed an opinion of defendant's guilt previous to his acceptance as a juror, this court said:

"Of course, if this juror did express himself in the manner stated, he ought not to have sat upon the jury, and we have no doubt that if the trial court believed from the evidence that the juror had made these statements, he would have set aside the verdict and granted the defendant a new trial. But in disposing of questions like this the ruling of the trial court is entitled to great weight, especially when the matter has been so thoroughly inquired into as in this case. The evidence that would justify the trial court in setting aside a verdict on the ground that one of the jurors had expressed opinions that would disqualify him from sitting in the case if they had been known, should be very clear and convincing, when first brought to the attention of the

court after verdict. If new trials could readily be secured after the verdict on grounds like these, the temptation to procure the needed evidence and the ease with which it could be procured, would result in many new trials being granted on this ground, when the verdict should not be disturbed.''

This is a correct statement of the rule often approved by this court, and applying it here we think appellant has by very clear and convincing proof, which is not even contradicted, proven not only that the juror had previously formed and expressed an opinion that appellant was guilty but that upon an examination to test his qualification for service, he denied having either formed or expressed such or any opinion, and that appellant accepted him as juror, in that belief; and while we are more than willing to accord to the ruling of the trial court the great weight to which it is entitled, we can not shut our eyes to the fact that in this case there is no evidence whatever to sustain that ruling. The Commonwealth having failed to introduce the juror or any evidence on the question, now asks us to sustain the lower court upon the presumption that the juror disclaimed his previous statements and expressed his confidence in his ability to fairly try the case according to the law, and that he, therefore, under section 207, Criminal Code, was not disqualified, notwithstanding his previously expressed opinion. But we can not indulge a presumption that is refuted by the evidence.

In the case of Mansfield v. Commonwealth. *supra,* the lower court's ruling was sustained and the new trial denied, but in that case the juror was examined in open court and ''in the most emphatic way'' denied he had made the statements attributed to him, and as stated in the opinion, ''It appears from the record that the trial judge investigated this matter very carefully, hearing orally the evidence of a number of witnesses and also affidavits introduced by both parties. Upon thus hearing and considering it, he declined and, as we think correctly, to grant a new trial on this ground.''

The practice of the court in examining witnesses orally in open court upon the trial of the motion for a new trial and in ''investigating this matter very carefully,'' it will be seen, was in that case approved and we desire again, as we did in the case of Barnes v. Com-

monwealth, 179 Ky. 725, to suggest the wisdom of such a course whenever it is practicable.

Possibly, if the matter had been thus investigated here the reversal would not have been necessary, but upon the proof that is before us we are left no alternative but to reverse the judgment and remand the case for a new trial.

It is, therefore, so ordered.