## Bonar v. Commonwealth.

(Decided April 30, 1918.)

### Appeal from Carter Circuit Court.

1. Appeal and Error—New Trial—Motion for.—Where the evidence heard upon a motion for a new trial based upon the

ground of implied bias of a juror is not supported by the affidavit of the defendant nor any of it made a part of the record in any manner prescribed by the law, the action of the trial court in overruling the motion cannot be reviewed on appeal.

2. Criminal Law—Trial—Right to be Confronted by Witnesses—Waiver.—It is competent for a defendant in a criminal prosecution to waive his constitutional privilege of being confronted with the witnesses against him "face to face," and if he in person consents that the testimony of such witnesses may be introduced without being present, he thereby waives such privilege and cannot insist upon it as a ground for reversing the judgment finding him guilty and fixing his punishment.

F. I. LE SAGE for appellant.

CHARLES H. MORRIS, Attorney General, and HENRY F. TURNER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, Charles Bonar, with four others, was indicted by the grand jury of Carter county on a charge of wilfully murdering Lake Kitchen by shooting and wounding him, and from which shooting and wounding he died. One of the co-defendants with appellant in the indictment was Asa Leadingham and when the prosecution came on for trial the appellant, Bonar, demanded a separate trial, whereupon the Commonwealth elected to first try Leadingham. A jury was empaneled for that purpose, and the trial of the latter was had resulting in a verdict convicting him and fixing his punishment at confinement in the penitentiary for twenty-one years. From the judgment pronounced on that verdict Leadingham prosecuted an appeal to this court, and the judgment was reversed for errors pointed out in the opinion in the case of Leadingham v. Commonwealth, 180 Ky. 38. The errors alleged consisted of actual and implied bias of two jurors who sat in the trial of the case, one of whom it was claimed and shown on the hearing of the motion for a new trial had, before being accepted on the jury, expressed an adverse opinion against the defendant, Leadingham, and the other was impliedly biased because of his relationship to Kitchen, the person alleged to have been murdered. It was shown in that case that the Commonwealth did not upon that hearing combat in any way the charge of the disqualifications of the two jurors, and that accepting the *prima facie* showing made by the defendant as true, the error

was sufficiently prejudicial to require a reversal of the judgment.

The present defendant, Bonar, was absent from the court room throughout the trial of Leadingham, except during the time he was testifying as a witness and while the case was being argued before the jury. When the latter returned its verdict in that case, and before being discharged, the defendant, Bonar, being present in person and by attorney, requested that the same jury be empaneled and sworn to try him upon the evidence which it had heard in the trial of Leadingham. The Commonwealth agreed to this, and the court instructed the jury as it had done in the Leadingham case. The jury retired for deliberation and afterward returned its verdict finding the defendant guilty and fixing his punishment at confinement in the penitentiary for a period of fifteen years. To reverse that judgment this appeal is prosecuted.

Two errors are relied upon by counsel for defendant as being sufficient to authorize the granting of a new trial, they being: (1) the implied bias of the juror, Orcutt, because of the relationship to the deceased; and, (2) that the defendant had the constitutional right "to meet the witnesses (against him) face to face," and that this is such a right as can not be waived by him.

Considering these grounds in the order mentioned, the defendant made no affidavit concerning the alleged relationship of the juror, Orcutt, to the deceased, but contented himself with manifesting that ground only by a statement made in his motion for a new trial, and in which motion he also refers to two affidavits upon that subject which had been filed by his co-defendant, Leadingham, upon the latter's motion for a new trial. However, in no manner pointed out by the law did he make such affidavits a part of the record now before us, and neither of the affidavits is incorporated in the record by any order of court, or any bill of exceptions, nor are they even copied into the record by the clerk. It is therefore manifest that under no rule of practice are we authorized to consider the first ground for reversal urged by counsel for defendant.

Turning now to the (2) ground, we find the record shows that: "At the conclusion of his (Leadingham's) trial, this day tried in this court, in which indictment said Charlie Bonar is jointly charged with said Lead-

ingham and others with the murder of said Kitchen, the defendant, Charlie Bonar, by counsel and in his own proper person requested and asked the court to allow the same jury who had just tried and convicted said Leadingham to try him on the same facts as brought out by both the Commonwealth and defendant, Leadingham, on said trial. Thereupon the same jury, viz., H. M. Orcutt, Davy Riggs, Charles Clay, Ed. Callihan, R. T. Shivel, L. C. Conley, Jerry Adkins, Jarvey Bentley, J. L. Valandingham, Jake Burton, J. H. Qualls, J. B. Boldridge, while yet in the jury box, immediately upon their return of the verdict against said Leadingham and before separation, were accepted by the Commonwealth and Charles Bonar, and said Bonar having waived a formal arraignment, and entered a plea of not guilty, the jury was duly sworn to well and truly try the issue upon the same evidence they had just heard in the trial of the case of the Commonwealth v. Asa Leadingham; and the jury after having received the instructions of the court as the law governing them in the trial of said Bonar, and without argument by counsel on either side, and after the case had been submitted to them by the court, retired to their room to consult their verdict, after a while returned into court the following verdict, viz.: 'We, the jury, agree and find the defendant, Charlie Bonar, guilty and fix his punishment at fifteen years in the penitentiary. L. C. Conley, one of the jury.' "

Notwithstanding those facts so solemnly and indisputably established, it is now insisted that it was wholly incompetent for the defendant to waive his right to be confronted "face to face" with the witnesses against him, and that inasmuch as he was not present at the trial of Leadingham except at the times mentioned, during which periods of absence testimony for the Commonwealth was heard, that he was therefore *not present* during the trial of his case, and that he was deprived of the benefit of his constitutional right to be present throughout his trial.

Lengthy discussions and much research are manifested by briefs in the case upon the point as to whether a defendant in a criminal prosecution can waive his right to be present throughout his trial, but we are convinced that no such question is presented by this record, since the defendant in this case *was* present from the

time he was arraigned and entered his plea of not guilty until sentence was pronounced upon him. The vice in the trial, if any, is not that the defendant was absent during its progress, but that unauthorized proceedings were taken and permitted at and during his trial when he was present which invaded the defendant's constitutional rights, and which he could not waive, although he attempted to do so. This alleged vice, as will be seen, consists in the way and manner in which the facts were developed before the jury. The means by which a tribunal obtains possession of the facts when they are contested in the trial of a case, is called in the law testimony. For the better protection of litigants, and to avoid impositions being practiced upon the courts, certain rules for the admission of testimony have been prescribed by the law. These rules affording such protection to the litigants may be waived by them, and testimony may be heard contrary to such prescribed rules. If this be done, either by the consent of the litigant or without his objection thereto properly manifested at the time of its introduction, he will be deemed to have waived his right to insist upon a strict enforcement of such rules, and this doctrine of waiver applies also to a defendant in a criminal prosecution although he may be guaranteed the constitutional right to have the testimony introduced and heard contrary to the way he consented. Hence we find in 8 R. C. L. 89, with reference to the right of the defendant in a criminal prosecution to waive the constitutional privilege of being confronted with the witnesses against him "face to face," this statement of the law:

"The right to be confronted by witnesses against him is a personal privilege of which every defendant may avail himself, or which he may waive, as he may see fit. The waiver may be either by express consent, by failure to assert in time, or by conduct inconsistent with a purpose to insist on it. It is apparently unanimously agreed that when a defendant expressly consents that secondary evidence of the testimony of a witness may be used against him on the trial, he thereby waives his right of confrontation by such witness. Thus, the right is waived where, by the consent of the accused, the prosecution is permitted to read in evidence the testimony of an absent witness given in some prior proceeding; the depostion of such a witness taken within or without the

jurisdiction; or a statement of what such a witness would testify, if present, as embodied in an agreement made to avoid a continuance or to dispense with the presence of the witness. A waiver by the defendant's counsel is a waiver by the defendant; this rule is all but universal, though in some jurisdictions the right cannot be waived except by a defendant in person.''

Many cases from the courts of highest resort, both Federal and state, are cited in the notes, including those of Diaz v. U. S., 233 U. S. 442, Annotated Cases 1913C 1138; Wray v. State, 154 Ala. 36, 45 So. R. 697, 129 Amer. S. R. 18.

In the Diaz case, *supra*, the Supreme Court of the United States held that testimony heard upon the trial of the defendant under a charge of assault and battery and afterwards introduced by the defendant, and of course with his consent, upon his trial under the charge of murder produced by the same assault did not violate the right of the defendant ''to meet the witnesses face to face,'' since by his consent to the introduction of that testimony he waived such right, and in so holding the opinion says:

''True, the testimony could not have been admitted without the consent of the accused; first, because it was within the rule against hearsay; and, second, because the accused was entitled to meet the witnesses face to face. But it was not admitted without his consent, but at his request, for it was he who offered it in evidence. So, of the fact that it was hearsay, it suffices to observe that when evidence of that character is admitted without objection it is to be considered and given its natural probative effect as if it were in law admissible. Damon v. Carrol, 163 Mass. 404, 408; Sherwood v. Sissa, 5 Nevada 349, 355; United States v. McCoy, 193 U. S. 593, 598; Schlemmer v. Buffalo, &c. Ry. Co., 205 U. S. 1, 9; Neal v. Delaware, 103 U. S. 370; Foster v. United States, 178 Fed. Rep. 165, 176. And of the fact that it came from witnesses who were not present at the trial it is to be observed that the right of confrontation secured by the Philippine Civil Government Act is in the nature of a privilege extended to the accused, rather than a restriction upon him. State v. McNeil, 33 La. Ann. 1332, 1335, and that he is free to assert it or to waive it, as to him may seem advantageous. That this is so is a necessary conclusion from the adjudged cases relating to the

like right secured by the constitution of the United States. Thus, it is held that the right is waived where, by the consent of the accused, the prosecution is permitted to read in evidence the testimony of an absent witness given in some prior proceeding—Hancock v. State, 14 Tex. App. 392; Rosenbaum v. State, 33 Alabama 354; Williams v. State, 61 Wisconsin 281; State v. Polson, 29 Iowa 133—or a statement of what such a witness would testify, if present, as embodied in an agreement made to avoid a continuance or to dispense with the presence of the witness. State v. Wagner, 78 Missouri 644, 648; State v. Fooks, 65 Iowa 452; State v. Mortensen, 26 Utah 312; State v. Lewis, 31 Washington 75, 88; or the deposition of such a witness taken within or without the jurisdiction. Butler v. State, 97 Indiana 378; State v. Vanella, 40 Montana 326; Wightman v. People, 67 Barb. 44; People v. Guidici, 100 N. Y. 503, 508; People v. Murray, 52 Michigan 288.''

To the opinion in the case of Wray v. State, *supra,* as reported in 129 Amer. S. R., the annotator, Mr. Freeman, appends a long note in which the right of the defendant in a criminal prosecution to waive the particular constitutional privilege of being confronted ''face to face'' by the witnesses against him is exhaustively considered, and the opinions of the courts up to that date are collated. They will be found practically unanimous in holding that such privilege may be waived, as will be seen from this statement taken from the annotated note on page 45:

''The authorities are practically uniform on the proposition that the constitutional right of an accused to be confronted by the witnesses against him is the personal privilege which the defendant can waive.''

In many if not quite all the cases the rule is the same, whether the crime be a capital offense or one of less magnitude, but the Supreme Court of North Carolina in the case of State v. Mitchell, 119 N. C. 784, held that the privilege could not be waived where the felony charged was a capital one. We have been unable to find any other state in the Union drawing that distinction, and we can see no sound or other than sentimental reasons for it. The reasoning of the courts in coming to the conclusions reached is that when the defendant is present he may expressly consent (or impliedly so by failing to object) to the introduction of testimony in a

manner unwarranted by the law, and which, if insisted upon by him, it would have been rejected. As for instance he may waive the introduction of any testimony by entering a plea of guilty, or the Commonwealth might with the consent or without the objection of the defendant introduce testimony secondary in its nature where the law would permit only the introduction of primary testimony. For example, if the Commonwealth should propose a continuance of the case because of the absence of a witness, and the defendant should agree that the testimony of the absent witness might be written out and read to the jury, such testimony would be secondary in its nature and wholly incompetent under the rules provided for the introduction of testimony, but surely no one could claim that the defendant under such circumstances would be entitled to a reversal of a judgment of conviction upon the ground here urged.

In the case of Collier v. Commonwealth, 110 Ky. 516, this court held that where the defendant during the trial escaped, it was competent for the Commonwealth to proceed with the trial in his absence until a verdict of the jury was rendered, but that no judgment could be pronounced against him until he was apprehended and brought into court. In disposing of the insistence there made that the defendant was deprived of the constitutional privilege of being confronted "face to face" with his witnesses, the opinion says:

"The constitution and laws of this state guarantee to any person accused of crime the right to a public trial, and the right to be confronted by the witnesses appearing against him. Section 11, Constitution; section 183, Criminal Code Practice. This means that no man can be deprived of his liberty by judgment of a court unless by a public trial, and unless the witnesses accusing him appeared in person at the trial, at which he could and should also be present. This much the laws of the land guarantee to him, but they do not go further to allow him to voluntarily and unlawfully absent himself from the trial after it has regularly and legally begun, and then, for such absence, allow the claim that his constitutional privileges have been ignored or abridged by the court. If he has suffered the lack of enjoyment of the constitutional right of being confronted by his witnesses, it is because he himself refused to be so confronted. There was neither failure of due provision of

legal opportunity nor of fair privilege afforded by the court for the defendant to meet his accusers face to face at the trial.''

If the privilege was relinquished and waived, as therein decided, by the defendant voluntarily absenting himself, it can surely be waived by a defendant who is present voluntarily consenting thereto.

Without further discussion, we unhesitatingly conclude that the appellant in this case waived the privilege upon which he is now insisting, and that he is in no condition to urge it as a ground for setting aside the judgment pronounced against him.

Hence, it results that the judgment must be and it is affirmed. Whole court sitting.