## STATE v. AIKERS et al.

No. 5722.   Decided December 5, 1935.   (51 P. [2d] 1052.)

508

*K. K. Steffensen*, of Salt Lake City, for appellants.

*Joseph Chez*, Atty. Gen., and *Zelph S. Calder*, Deputy Atty. Gen., for the State.

FOLLAND, Justice.

The defendants were convicted of robbery, and appeal. The evidence discloses that two men entered the store of David Newman in Salt Lake City on the evening of January 26, 1935, at about 8:30 o'clock. One of the men held a gun on Newman and his daughter, the only other persons present in the store, while the other man took money from the cash register. The defendants were arrested at a Salt Lake Hotel on or about March 25, 1935. Both Newman and his daughter identified the defendants as the men who perpe-

trated the robbery. They testified that Aikers had come to the store about two hours prior to the robbery and made inquiry as to some person in the neighborhood whom he wanted to locate; that when the two men entered the store at the time of the robbery, Newman said to Aikers, "Did you find your friend?" A woman residing at a home next to the store also identified Aikers as a person who called at her house, making the same sort of inquiry at about the same time as that testified to by the Newmans. A revolver was found under the mattress in the room occupied by Vallee when he was arrested. The Newmans testified this gun was similar to the one held by Aikers at the time of the robbery. It was introduced in evidence. The defense was an alibi. Vallee testified, but Aikers did not. The defendants introduced evidence tending to prove they were at the Roma Inn, located in quite a different section of the city from that of the Newman store, at the time of the alleged robbery. The state's rebuttal tended to impeach the effect of defendants' alibi testimony.

The errors relied on for reversal, which are assigned jointly and some of them singly, are: That (1) the jury was impaneled in the defendant Aikers' absence in violation of statute and of his constitutional right to be present at the trial, and also the right in his codefendant, Vallee, to have him present to join in the challenges to the jurors; (2) errors in the admission and rejection of evidence; (3) the giving of oral instructions to the jury without consent of defendants; and (4) refusal of the court to dismiss the case at the time the state rested.

The first assigned error is the most important and troublesome problem in the case. The case was set with others for a date certain. The defendants were to be tried together, as no segregation had been requested. The case ahead of this one on the calendar took a longer time than had been anticipated. Both defendants were at liberty on bail. Defendants and their attorney and witnesses had been ready for several days, and were waiting for trial. The case

was called for trial at 10 o'clock a. m. on April 8, 1935. The defendant Vallee and the attorney for both defendants were present at 10 o'clock, but Aikers was absent; he having left his hotel that morning before word was received that the case would be called for trial. He appeared in court, however, at 2 o'clock, at which time the examination of the jurors was practically completed, but the jury was not yet sworn to try the case. The record shows the following:

"Mr. Pearce: (At 10:00 o'clock A. M.) I think we can start. The only difficulty is, we have been waiting three weeks. Mr. Aikers will be here at noon. I think we can go ahead and impanel the jury and we get him in the noon hour.

"The Court: What about stipulating the rights of the defendant?

"Mr. Pearce: I think we can stipulate while he is here.

"The Court: I don't think a stipulation of the attorneys would amount to anything, unless he, himself, agrees to it, and there might be some question in that. Can the attorney stipulate the constitutional rights of the defendant?

"Mr. Rawlings: My thought was probably when he comes this afternoon we could have him put a stipulation in the record that the jury was impaneled in his absence, and he had no objection. There might be some question—

"The Court: That is too bad. Where is he?

"Mr. Pearce: He is some place down town.

"The Court: Is he out on bail?

"Mr. Pearce: Yes, the bondsmen are right after him. They went over to the hotel. Of course, I called the hotel immediately after Mr. Rawlings called me, and they said he had just gone over to town. I called the bondsmen, and they went right out, trying to find him, and they may find him momentarily. He has been ready and had his witnesses for three weeks. You have been busy on the Smith case.

"The Court: That took us about fifteen days, to try that case, which is one reason the calendar has gone a little behind in the meantime. Well, if the District Attorney wants to take the chance.

"Mr. Rawlings: If he raises any objection on counsel's stipulation, it would be a matter of trying him again and we would not be out anything.

"The Court: The charge is robbery. It is a serious charge. These delays are very annoying. Well, you may proceed if you think it is all right.

"Mr. Rawlings: Let us proceed with this one case, anyway, then, when you get him here, your Honor—

"Mr. Pearce: His car is parked in front of the hotel. He is not very far. He is some place over in town, I think.

"The Court: It would be a rather embarrassing situation to go ahead and impanel the jury, and he could not be found this afternoon.

"Mr. Rawlings: We can proceed with the one defendant.

"The Court: Yes, you can do that.

"Mr. Rawlings: If I was certain he would be here at two o'clock.

"Mr. Pearce: He told the landlord he would be back at noon. They may find him before that.

"Mr. Rawlings: They are over looking for him. I think the safest thing is to proceed now, and if there is any question, we will go ahead with Vallee.

"The Court: Which one is it that is absent?

"Mr. Pearce: Aikers.

"The Court: He is the absent one?

"Mr. Pearce: Yes. * * *"

At 2:00 o'clock P. M., and before final acceptance of the jurors, the following proceedings were had:

"Mr. Rawlings: May the record show that the defendant Earl J. Aikers is now in the court room with his counsel, and that as yet the jury has not been accepted, but that they have been questioned, and that the defendant Earl J. Aikers is now given the opportunity to make any challenges that he may see fit, to the jury, or to the final acceptance of them.

"The Court: Do you desire to make any, Mr. Pearce?

"Mr. Pearce: No, we don't have any challenges.

"Mr. Rawlings: May the record further show that the defendant raises no objection to the fact that he was not personally present during the preliminary examination of the venire-men. That is correct?

"Mr. Pearce: That is correct.

"The Court: Is that correct, Mr. Aikers?

"The Defendant (Earl J. Aikers): Yes.

"Mr. Rawlings: You are now waiving any objection to proceeding in your absence, so far as the preliminary examination is concerned?

"Mr. Aikers: Yes.

"Mr. Rawlings: Let the record show he answered in the affirmative.

"The Court: Let the record so show. I believe that is all that is necessary. Will the clerk please swear the jury to try the case."

The record shows "further questioning of the jury" in the presence of both defendants after court convened at 2 o'clock.

It is contended that the trial as to Aikers was conducted during the first half day in his absence in violation of the statutory provision, 105-28-3, R. S. Utah 1933, which provides, "If the prosecution is for a felony, the defendant must be personally present at the trial, but if for a misdemeanor, the trial may be had in the absence of the defendant"; and also in violation of his constitutional right to appear and defend in person and by counsel. Article 1, § 12, Const. of Utah. The right to be present at all stages of the trial is claimed to be of such an absolute character that it cannot be waived either by counsel or the defendant, and when the court permits the trial to proceed in the absence of the defendant the judgment of conviction must be set aside. There is no doubt but that the constitutional right to appear and defend in person and by counsel is a sacred right of one accused of crime which may not be infringed or frittered away, and is one which may not be denied by a court or be waived by counsel. *Schafer* v. *State,* 118 Tex. Cr. R. 500, 40 S. W. (2d) 147; *State* v. *Hutchinson,* 163 La. 146, 111 So. 656. Whether such right may be waived by the defendant personally is a question on which the authorities are divided. 8 R. C. L. 69, 94. The great weight of authority is that the defendant may, by conduct or in words, waive such right, and that he may not take advantage of his voluntary absence, if he is at liberty on bail, during some part of the proceedings at which it is his duty as well as his right to be in attendance. A great many of the cases where this question arises are cases where the defendant, being at liberty on bail has absented himself from the trial, usually without consent of the court, while the

trial was in progress or after the submission of the case to the jury, and would not be present when the jury returned for further instruction or information or to render its verdict. The decisions turn on the question of whether the defendant was voluntarily absent at such times. In such cases it is generally held that the defendant cannot by his voluntary act invalidate the proceedings. 16 C. J. 817; *State* v. *Way,* 76 Kan. 928, 93 P. 159, 14 L. R. A. (N. S.) 603; *State* v. *Thurston,* 77 Kan. 522, 94 P. 1011; *State* v. *Fry,* 131 Kan. 277, 291 P. 782; *Hill* v. *State,* 17 Wis. 675, 86 Am. Dec. 736; *Clemens* v. *State,* 176 Wis. 289, 185 N. W. 209, 21 A. L. R. 1490; *Lowman* v. *State,* 80 Fla. 18, 85 So. 166; *Kindrick* v. *Commonwealth,* 226 Ky. 144, 10 S. W. (2d) 639; *Boreing* v. *Beard,* 226 Ky. 47, 10 S. W. (2d) 447; *State* v. *Gorman,* 113 Minn. 401, 129 N. W. 589, 32 L. R. A. (N. S.) 306; *Van Houton* v. *People,* 22 Colo. 53, 43 P. 137; *State* v. *Thompson,* 56 N. D. 716, 219 N. W. 218; *Blagg* v. *State,* 36 Okl. Cr. 337, 254 P. 506; *Scott* v. *State,* 113 Neb. 657, 204 N. W. 381; *State* v. *Waterhouse,* 109 N. J. Law, 15, 160 A. 91; *Ballou* v. *State,* 113 Tex. Cr. R. 493, 22 S. W. (2d) 666; *Sobieski* v. *State* (Tex. Cr. App.) 71 S. W. (2d) 534; *Vicks* v. *State,* 42 Ga. App. 451, 156 S. E. 729; *Frank* v. *State,* 142 Ga. 741, 83 S. E. 645, L. R. A. 1915D, 817; *Frank* v. *Mangum,* 237 U. S. 309, 35 S. Ct. 582, 59 L. Ed. 969; *Diaz* v. *United States,* 223 U. S. 442, 32 S. Ct. 250, 56 L. Ed. 500, Ann. Cas. 1913C, 1138; *United States* v. *Vassalo* (D. C. Mich.) 52 F. (2d) 699; *Noble* v. *United States* (C. C. A. 9) 300 F. 689.

It is not only the right of the defendant to be present, but is a duty which the statute imposes upon him, and he usually will not be permitted to take advantage of his own misconduct when he has voluntarily absented himself from the trial. *Henry* v. *State,* 94 Fla. 783, 114 So. 523. It is one thing for him to absent himself when he is at liberty and can voluntarily do so, and quite another thing for the court to deprive him of any substantial right against his protest or even when, in some circumstances, he remains

silent. Where a defendant is in custody, and therefore not a free agent, the duty is on the court to see that he is personally present at every stage of the trial. *Hopt* v. *Utah*, 110 U. S. 574, 4 S. Ct. 202, 28 L. Ed. 262, 265; *Riddle* v. *Commonwealth*, 216 Ky. 220, 287 S. W. 704; *State* v. *Moore*, 124 Or. 61, 262 P. 859; *State* v. *Thomas*, 128 La. 813, 55 So. 415; *State* v. *Chandler*, 128 Or. 204, 274 P. 303. His absence would be imputed, not to him, but to his custodian. *Harris* v. *State*, 115 Tex. Cr. R. 227, 28 S. W. (2d) 813, 70 A. L. R. 1066. Proceedings had in the absence of a defendant, without his fault and without his knowledge or consent, is ground for reversal. *Crow* v. *State*, 89 Tex. Cr. R. 149, 230 S. W. 148; *State* v. *Schasker*, 60 N. D. 462, 235 N. W. 345; *State* v. *Shutzler*, 82 Wash. 365, 144 P. 284; *State* v. *Dingman*, 177 Minn. 283, 225 N. W. 82; *Lewis* v. *United States*, 146 U. S. 370, 13 S. Ct. 136, 36 L. Ed. 1011. Some courts hold that in short absences where the defendant has suffered no disadvantage by his absence, or the court's action could not possibly result in prejudice, it is not error. *Whitaker* v. *State*, 173 Ark. 1172, 294 S. W. 397; *People* v. *Miller*, 33 Cal. 99; *Howard* v. *Kentucky*, 200 U. S. 164, 26 S. Ct. 189, 50 L. Ed. 421. Cases respecting the right of a defendant to accompany the jury to a view of premises, variously decided, are: *State* v. *Mortensen*, 26 Utah 312, 73 P. 562, 633; *Noell* v. *Commonwealth*, 135 Va. 600, 115 S. E. 679, 30 A. L. R. 1345, and annotation; *Snyder* v. *Massachusetts*, 291 U. S. 97, 54 S. Ct. 330, 78 L. Ed. 674, 90 A. L. R. 575. Right to waive jury trial, see: *Patton* v. *United States*, 281 U. S. 276, 50 S. Ct. 253, 74 L. Ed. 854, 70 A. L. R. 263. Other cases hold that the defendant must be present at all stages of the trial, and even a voluntary absence will be ground to set aside the verdict and grant a new trial. *State* v. *Smith*, 90 Mo. 37, 1 S. W. 753, 59 Am. Rep. 4; *Sherrod* v. *State*, 93 Miss. 774, 47 So. 554, 20 L. R. A. (N. S.) 509; *Warfield* v. *State*, 96 Miss. 170, 50 So. 561; *State* v. *Reed*, 65 Mont. 51, 210 P. 756.

A defendant is entitled to be safeguarded in every constitutional right, but should not be permitted to so juggle with such rights as to embarrass and delay the courts ■ or to defeat the ends of justice.

However, as we view the record, it is not necessary to apply the rules of law laid down in the cases referred to, for the reason the case is susceptible of decision on a different theory. The record is not so clear or decisive as we should like it to be with respect to the intention of the court and the parties. It is reasonably clear that the defendant Vallee, the defendant Aikers, and the attorney for both, were anxious to have the trial proceed without further delay. No postponement was requested by the defendant Vallee who was present at 10 o'clock a. m., or by the attorney for both defendants.

The trial court was loathe to proceed without the presence of Aikers, and more than once suggested doubt as to the regularity of the proceeding. It is reasonably clear that the district attorney decided to proceed against the defendant Vallee alone, and to try him separately in the ■■ event Aikers did not timely appear, or if, when he did appear, he should object to being joined in the trial. We think, therefore, the case proceeded against Vallee alone during the morning session while the jurors were being examined. At 2 o'clock, the defendant Aikers put in an appearance, and he at that time joined with Vallee in the trial of the case. As to him, the trial started at that time. It was no longer a trial as to Vallee alone, but a trial of both defendants jointly. Aikers accepted the jurors already called and examined, and this he did prior to the time the jury was sworn to try the cause. He and his attorney were given opportunity to further examine the jurors or to further challenge any of them. Whatever right or privilege he had in this respect was then available to him, but he personally and by attorney consented to proceed with the jurors then in the box. There is no question here as to whether the defendant's presence or any other right which he was en-

titled to assert was attempted to be waived by his attorney. He personally and with advice of his attorney consented to proceed in the manner indicated. From the time his trial commenced, he was personally present at the trial. This is not a case where the defendant absented himself after his trial commenced and before rendition of verdict. The law guarantees to every defendant the right to challenge the jurors who may be called to try his cause, but it needs no citation of authority to support the view that he may waive this right. The duty of examining the jurors is with the trial judge, but he may permit counsel for the defendant to examine them within reasonable limits. 105-29-1, R. S. Utah 1933. A defendant may accept jurors without examination if he so desires. The defendant Aikers was denied no right or privilege granted him by law.

Much is made of the mandatory language of 105-28-3, which is to the effect that the defendant "must be personally present at the trial." The same mandatory language is used in connection with the arraignment of a defendant. This court in the case of *State* v. *Estes,* 52 Utah 572, 176 P. 271, in construing that provision, held that where a defendant voluntarily went to trial, contested every step, and claimed and was granted every right known to the law during the progress of the trial, he will be held to have waived the right to enter a formal plea and his conduct held tantamount to a plea of not guilty. In that case, no legal, formal arraignment was had or plea entered, notwithstanding which the defendant went to trial without objection. He later raised the objection that the statute required the arraignment and entry of plea and that this requirement could not be waived. If a defendant can waive his arraignment and entry of plea by going to trial without objection, he can consent to accept a jury composed of jurors examined in his absence, but which he is willing to accept as the jury to try his case.

A case somewhat similar to this one is *Bonar* v. *Commonwealth,* 180 Ky. 338, 202 S. W. 676. There, two defendants

were jointly charged with murder. On motion a severance was had and they were tried separately. After verdict in the first case, the second defendant requested that he be tried by the same jury and the same evidence without the introduction of other evidence. This was allowed by the court. The jury was sworn to try his case, instructed as to the law by the court, and a verdict of guilty was rendered. The defendant appealed and assigned as error that he was deprived of his right to be confronted face to face by the witnesses against him; he not having been present at the trial of his codefendant, except when he was himself on the witness stand. He claimed his right to be present at the impaneling of the jury, and the taking of testimony was such a right as could not be waived by him. The appellate court, however, said that there was no such question presented by the record, but the vice, if any, was not that the defendant was "absent during its progress but that unauthorized proceedings were taken and permitted at and during his trial." The holding of the court was that the constitutional right of the accused to be confronted by the witnesses against him was a personal privilege which he could voluntarily waive.

In the case before us, there is no question but that the defendant Aikers was confronted by the witnesses against him, and the jury, which he was willing to accept and for which he stipulated in open court, was sworn to try the case after he had been accorded the privilege of examining the jurors and of challenging any of their number. It is fair to say that this appeal is taken and this objection urged by counsel other than the one who represented defendants at the trial.

It is further contended by appellants that under the statute, 105-31-2, R. S. 1933, providing that, "When several defendants are tried together they cannot sever their challenges, but must join therein," it was the right of defendant Vallee to have Aikers present when the challenges were made so that both could join therein.

So far as Vallee is concerned, he cannot complain, since he made no objection at the time, nor did he represent to the court that he could not proceed without the presence of his codefendant. In addition thereto, he was present during the entire examination by his counsel, and had the advantage of exercising such challenges as he desired. Aikers cannot complain because he had his attention directed to the fact that he could challenge any of the jurors and he voluntarily answered, both in person and by counsel, that he did not care to do so. *United States* v. *Vassalo* (D. C.) 52 F. (2d) 699. Both defendants had opportunity of consultation before the jury was sworn, but they accepted the jurors without objection. It must be held they waived the right, if any they had, for other joint consultation. Both defendants and their counsel were ready and anxious for the trial to proceed as it did, and were responsible for the court proceeding in the manner indicated. We think the rule applicable that a party cannot successfully assign as error a ruling which he has himself induced the court to make. 2 R. C. L. 238.

Error is next assigned to the ruling of the court sustaining an objection to a question by defendants' counsel propounded to Miss Newman, as follows:

"Q. Were you present when Mr. Rogers pointed out these pictures of these defendants, and said that those were the two men that they had arrested? A. He didn't say that.

"Mr. Rawlings: Just a minute. I am going to object on the ground he is trying to confuse this witness, by putting things in her mouth that are not true.

"Mr. Pearce: She seems to be taking care of herself.

"Mr. Rawlings: I think she is entitled to have this thing asked her in a proper manner. I object to that question on the ground that it is based on a premise that is not in evidence; made for the sole purpose of confusing the witness, and endeavoring to get before the jury something that is not true.

"The Court: The objection is sustained. There is no evidence.

"Mr. Pearce: May we have an exception."

It is argued that by sustaining the objection the court prevented the defendant from thoroughly examining the witness with respect to how she learned the identity of the defendants. The question to which objection was made was answered, and the answer was not stricken. It is apparent from the answer that the objection made by the district attorney was good. The objection was therefore properly sustained. A reading of the record of the subsequent examination indicates that counsel was not restricted in his examination. We find no grounds for the criticism that the defendants were not permitted to thoroughly examine this witness on the subject-matter disclosed.

While one of the police officers was on the stand, the district attorney produced a pistol which he showed to the witness, and asked him if he had seen the gun before. The witness answered, "Yes." The district attorney asked, "Q. Where did you see it?" This was objected to on the ground that, "It is asking about an exhibit which is ▮▮▮ not in evidence." The court remarked, "I assume he could not very well get it in evidence unless he asks about it," and overruled the objection. The witness answered that the gun was found under the mattress of the bed in Mr. Vallee's room at the time of his arrest. The objection was properly overruled, since it would be necessary to identify the exhibit and connect it with one or both of the defendants before it could be received in evidence. It is further argued that the remark of the court, quoted above, was prejudicial to the defendants. No objection was made to the remark at the time, and, even had there been, we are unable to see how any prejudicial effect would follow from such a statement.

Error is assigned to the receiving of the gun in evidence without proper identification. Before the gun was offered, however, a question was asked which is said ▮ to have reference to some cartridges, although this does not clearly appear from the record. The question was: "Where did you find this? A. The same place.

"Q. Where was it in relation to the gun?"

Objection was made to this question, that it was asking the witness about an object not yet in evidence. The objection was overruled, but no answer was made to the question. Counsel then asked:

"Did you take this gun into your possession and the shells? A. Yes, sir.

"Q. You say this is the gun you found under the bed? A. That is the gun."

The gun was then received in evidence over the defendants' objection that, "It has not been identified as the gun which was used in the commission of the crime." Obviously, no prejudice accrued to defendants because of the court's overruling the objection to the question, "Where was it in relation to the gun?" since the question was not answered. As to the admission of the gun in evidence, we note the prosecuting attorney limited his offer as follows: "The purpose of the introduction of this evidence would be to show that a gun was used that night and that this resembles it in color. I think they said it was a blue steel gun." The court remarked, "It is not being introduced as being positively identified as the gun but as a weapon similar to the one used by the persons."

It is not a requirement of the law that the gun offered in evidence be positively identified as the one used in the perpetration of the crime. It is sufficient when it is shown that the gun offered in evidence is similar in appearance or answers the same general description of the gun used in the crime. 16 C. J. 618; *People* v. *Radovich*, 122 Cal. App. 176, 9 P. (2d) 542; *People* v. *Sampsell*, 104 Cal. App. 431, 286 P. 434; *People* v. *Abbey*, 124 Cal. App. 412, 12 P. (2d) 655; *People* v. *Stoerkel*, 87 Cal. App. 336, 262 P. 825; *People* v. *Cotton*, 117 Cal. App. 469, 4 P. (2d) 247. Failure to positively identify the weapon as the one used in the crime affects the weight and probative force of the testimony, rather than its admissibility. The defendants

cite *State* v. *Kehr*, 133 Iowa, 35, 110 N. W. 149, in support of their objection. That case is clearly distinguishable. There a gun had been used in the commission of a burglary, a shot fired, and the bullet found. Defendant was apprehended two months later and had a revolver in his possession. He was not identified, nor was the gun, nor was it shown that the bullet came from defendant's gun or one of the same size or make. The state attempted to connect defendant with the crime by circumstantial evidence. The court said the fact alone that defendant had a revolver in his possession two months afterward would not necessarily tend to connect him with the crime. Here, Vallee was independently identified as one of the robbers. After that the evidence of finding a gun in his possession, similar to a gun held by one of the robbers, was merely a corroborating circumstance in his identification. The objection was properly overruled. Since no other objection was made to the admissibility of the gun, we do not discuss grounds which might possibly have been urged.

Several errors are assigned with respect to rulings of the court touching the admissibility of testimony, particularly on cross-examination of certain of the witnesses. These objections are not of sufficient importance to require us to discuss them separately. It is sufficient to say we have carefully read the record and find no substantial error in respect to these matters.

The court instructed the jury orally, a practice permissible under the statute where there is consent of both parties entered in the minutes, and the instructions are taken down by the court reporter. 104-24-14, R. S. 1933. The objection is that the defendants did not consent to the oral instructions. The record discloses the following colloquy between the court and counsel:

"Mr. Lowry: * * * The State will be satisfied with oral instructions. They may be read into the record, and later transcribed.

"Mr. Pearce: I think the defendants would like written instructions.

"The Court: Then I will have to get busy on them. How much time will it take you?

"Mr. Lowry: I only have two witnesses, and they will both be brief. I think fifteen minutes will be as much time as we need.

"The Court: They will be read into the record, and they will be transcribed. It is practically the same thing.

"Mr. Lowry: It will save time.

"The Court: You can get them transcribed, if you desire.

"Mr. Pearce: We can waive that .

"The Court: It is just merely to save time."

After the next witness was examined, the court said:

"Let the record show the instructions may be given orally and taken down by the reporter, and hereafter transcribed, if desired."

The point of defendants' objection is that when their counsel said, "We can waive that," it was waiver of transcription by the reporter and not a waiver of written instructions or consent to the giving of oral instructions. It is too late for defendants to avail themselves of this objection. The trial court understood the language of counsel to mean consent that the instructions be given orally, because thereafter the court said, "Let the record show the instructions may be given orally, and taken down by the reporter, and hereafter transcribed, if desired." This language indicates that the court understood counsel had consented to the giving of oral instructions. If this had not been the case, counsel for the defendants clearly had the right to object to oral instructions, and it was his duty to have corrected the misunderstanding of the court. But instead of that, no objection was made and the court's attention was not called to the fact that he had misinterpreted the remark of counsel, if such was the fact. Objection should have been made at the time to be of avail to defendants. *Van Cott* v. *Wall*, 53 Utah 282, 178 P. 42. They cannot now have the judgment of conviction reversed because the record does not show as clearly as it should that the defendants consented.

Defendants do not assign any error in the instructions or show any prejudice or disadvantage because of the method followed by the court, except by making the direct statement that, with written instructions, "defendants would have reasonable opportunity to examine them and enter objections and that the jury could then have the written instructions with them in their deliberations." Both these purposes could have been accomplished by a transcription of the instructions by the reporter, but, by defendant's admission, this was waived by their counsel.

The last assignment of error pertains to the overruling of defendants' motion to dismiss made at the time the state rested its case. The motion was on two grounds: First, the absence of defendant Aikers at the impaneling of the jury; and, second, failure of the state to prove beyond a reasonable doubt the guilt of the defendants. The first ground we have already discussed and disposed of. Under the second ground, the defendants argue that the identification of these defendants by the witnesses was not sufficiently definite or positive to warrant submitting the case to the jury. We have carefully read all the evidence, and are satisfied that it was sufficient to make a prima facie case. The witness David Newman and his daughter positively identified the defendants as the men who perpetrated the crime. Whether their statements were to be taken at face value was a matter for the jury. The court was justified in submitting the case to the jury.

Finding no substantial error in the record, the judgment of conviction is affirmed.

ELIAS HANSEN, C. J., and EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.