[Crim. No. 1544. Second Appellate District, Division Two.— December 17, 1927.]

THE PEOPLE, Respondent, v. HENRY A. STOERKEL, Appellant.

Rosecrans & Emme and Bayard R. Rountree for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, and John D. Richer for Respondent.

THOMPSON, J.—The defendant was convicted and sentenced for the crime of robbery and appeals from the judgment and order denying his motion for a new trial. The

principal basis of his complaint is that the evidence is insufficient to justify the verdict, although he does assign as error the admission of certain testimony and also charges misconduct on the part of the district attorney.

At about 9:45 P. M. on the evening of May 2, 1927, two of the People's witnesses, Arthur M. Taube and Emma A. Kropp, were held up and robbed of $118 in money and a diamond ring worth approximately $500 as they sat in an automobile on the top of a hill at City Terrace, just east of Los Angeles. Some minutes after they had stopped their machine at this point a man threw a flashlight in their face, pointed an automatic gun at Taube with the command to "Stick 'em up; I mean business." Taube was first searched for money; then the robber went to the other side of the car and took Miss Kropp's ring; came back again to Taube's side of the automobile and after another search secured the remainder of the latter's money. Both of these witnesses identified the defendant as the man, and picked him out of five or six other men at the county jail as being the one who committed the robbery, as did also the witness Miss Goldie Blasman. The last-named witness was driving out Ramona Boulevard with a Mr. Rosen on the evening of April 27, 1927, returning home from "some doings" at the schoolhouse, at about 10 P. M., when Mr. Rosen stopped to fix the muffler. As he did so a man approached with a flashlight and gun and ordered Rosen to "Stick 'em up." He took Mr. Rosen's watch and money and then took from Miss Blasman's finger her diamond ring and also took her wrist watch.

On the night of May 14, 1927, at 11:30 P. M., Deputy Sheriffs E. J. Small and C. H. Pearson were driving east on Manchester Avenue, when suddenly the defendant appeared in the middle of the street ahead of them. The officers turned a spotlight on him and as they did so he threw his hands under the overcoat he was wearing and something fell to the ground, which later it developed was a 38-caliber gun fully loaded, with belt and holster. A few feet from here the officers also picked up a flashlight. The witnesses Taube, Miss Kropp, and Miss Blasman all testified that the gun and flashlight were similar in appearance to those used by the man who held them up. █
The defendant introduced evidence of an alibi which had

it been believed by the jury would have amply supported a verdict of not guilty. The defendant also introduced testimony to show that there was no moon on the night of May 2, 1927, and since the lights of the automobile in which Mr. Taube and Miss Kropp were sitting were turned off, and since there were no street lights in the immediate vicinity, counsel argues that these two witnesses could not identify the defendant. However, the witness Taube said he thought that the defendant laid the flashlight down and that sometimes the light reflected on the defendant. Miss Kropp testified that the defendant stooped over a bit to take the ring off her finger. There were street lights in the neighborhood where Rosen and Miss Blasman were robbed. Under all these circumstances we can see nothing inherently improbable in the testimony of these witnesses or any of them. And while counsel have called our attention to instances where the identification has later proved to be erroneous, it is so well settled that the appellate tribunal should not disturb the verdict of the jury unless there is no evidence to support it, or unless the testimony is so improbable or false as to be incredible, that citation of authority is unnecessary. The objection which appellant has to this evidence involves a weighing of it. The jury evidently believed the testimony of witnesses for the prosecution and that their opportunity for observation was sufficient to enable them to properly identify the defendant. We must content ourselves with this determination.

The appellant asserts that the testimony regarding the circumstances of the arrest should not have been admitted, nor should the articles found at that time, to wit, the gun, belt, holster, and flashlight have been admitted. It is true that these articles were not positively identified as being used at the time of the robberies, but we think the objection counsel has to this evidence runs to its weight rather than to its admissibility. In the case of *People* v. *Hale*, 81 Cal. App. 734 [254 Pac. 639], pistols found in defendant's room to which others had access five days after the robbery were received, not as proof that pistols were used in committing the robbery, but for "the purpose of showing that the defendants had the means of doing what the witnesses had charged them with doing." The testimony in this case is that the gun and flashlight were similar

to those used in the robberies. The rule of law, under the circumstances, is satisfied sufficiently to warrant their introduction in evidence. (*People* v. *Ferdinand,* 194 Cal. 555 [229 Pac. 341].)

Necessarily these articles might not have been introduced had the witnesses not been allowed to detail the circumstances under which they obtained possession of them. A similar contention was urged in the case of *People* v. *Mar Gin Suie,* 11 Cal. App. 42 [103 Pac. 951]. There the officer arrested the defendant a few days after the homicide complained of and found a couple of pistols in his room. These guns were claimed by a woman occupant of the room. In reply to the objection the court said: "As part of the original case of the people, we think the testimony with regard to the finding of the pistols was proper as furnishing a circumstance bearing upon the charge, whether directly or remotely was for the jury to decide in view of all the other facts and circumstances. . . . The woman declared, it is true, and in fact claimed ownership of everything in the room; *but the people not only had the right to the testimony complained of, but to prove every other circumstance occurring at the time of the arrest of the defendant having any bearing on the crime for which the defendant was arrested, or upon his conduct when arrested.* (Italics ours.) His actions when the detective inquired as to the ownership of the pistols were proper to be described to the jury, and in that connection it was proper enough to receive testimony relative to the finding of the pistols." It must be borne in mind that there was testimony that the robberies were committed with pistol and flashlight, identified in the manner already discussed. Under this situation the statement of the court in *People* v. *McDowell,* 64 Cal. 467 [3 Pac. 124], is pertinent: "The testimony of the witness Hicks as to the slung-shot in the possession of the defendant, and as to the statement made by defendant, was relevant and material, because there was evidence tending to show that the wounds inflicted upon the person of deceased might have been caused by such an implement." See, also, *People* v. *Szafcsur,* 161 Cal. 636 [119 Pac. 1083]. So, too, in the case of *People* v. *Winthrop,* 118 Cal. 85–91 [50 Pac. 390], it is said: "Nor was there any error in admitting evidence of the circumstances

attending defendant's arrest, including his declaration at the time, or in permitting the prosecution to introduce the various articles taken ·from his person. This evidence showed that when arrested, shortly after the commission of the offense, defendant was apparently hiding in the city of Oakland away from the place of his residence; that he was in disguise and passing under an assumed name and denied his identity to the arresting officer; that among the articles found upon his person were several newspaper clippings containing accounts of the robbery and a recently purchased railroad ticket from Oakland to Mojave. Such evidence is always admitted as having a tendency greater or less, according to the circumstances, to establish guilt.'' It can scarcely be suggested that the possession of newspaper clippings and a railroad ticket can be of greater probative value than the possession of the gun and flashlight or that hiding away in Oakland in disguise has more weight than being in the middle of the street armed as was defendant at 11:30 at night, or that denial of identity is entitled to greater consideration than denial of the possession of the gun which the officers saw him drop. It is suggested, however, that these circumstances were prejudicial because they had a tendency to arouse suspicion that defendant had committed or was about to commit a separate offense. Were this so it would not render testimony, otherwise admissible, inadmissible. In *People* v. *Ebanks,* 117 Cal. 652, 663 [40 L. R. A. 269, 49 Pac. 1049], it is said: ''Touching the suggestion of counsel that the evidence tended to prove the attempt to commit another offense, and thus to prejudice him in the eyes of the jury, the case of *People* v. *Walters,* 98 Cal. 138 [32 Pac. 864], is in point. In that case ˙ the court, speaking through Beatty, C. J., said: 'It is true that in trying a person charged with one offense, it is ordinarily inadmissible to offer proof of another and distinct offense, but this, only because the proof of a distinct offense has ordinarily no tendency to establish the offense charged. But whenever the case is such that proof of one crime tends to prove any fact material in the trial of another, such proof is admissible, and the fact that it may tend to prejudice the defendant in the minds of the jurors is no ground for its exclusion. These remarks are applicable to any · case in which two persons

are murdered or assaulted at the same time, and as part of the same transaction. (See, also, *People* v. *Cunningham,* 66 Cal. 668 [4 Pac. 1144, 6 Pac. 700]; *People* v. *Smith,* 106 Cal. 74, 82 [39 Pac. 40]; *People* v. *Craig,* 111 Cal. 460, 468 [44 Pac. 186]; *People* v. *Bidelman,* 104 Cal. 613 [38 Pac. 502]; *People* v. *Lane,* 101 Cal. 517 [36 Pac. 16]; *People* v. *Walters, supra; People* v. *McGilver,* 67 Cal. 55 [7 Pac. 49]; *People* v. *Sanders,* 114 Cal. 216 [46 Pac. 153]; *Moore* v. *United States,* 150 U. S. 57 [37 L. Ed. 996, 14 Sup. Ct. Rep. 26, see, also, Rose's U. S. Notes]; *People* v. *Harris,* 136 N. Y. 423 [33 N. E. 65]; *Pierson* v. *People,* 79 N. Y. 424 [35 Am. Rep. 524]; *Commonwealth* v. *Coe,* 115 Mass. 481, 501; *Commonwealth* v. *McCarthy,* 119 Mass. 354, 355; *State* v. *Patza,* 3 La. Ann. 512; *Kramer* v. *Commonwealth,* 87 Pa. St. 299, 301; *Goersen* v. *Commonwealth,* 99 Pa. St. 388, 399; Id., 106 Pa. St. 477, 496 [51 Am. Rep. 534]; *Swan* v. *Commonwealth,* 104 Pa. St. 218, 220; *State* v. *Myers,* 2 Mo. 558 [52 Am. Rep. 389].) These cases are quoted and cited to meet not only the foregoing point, but many other objections offered in the trial of the cause, which space will not permit us to discuss at length, among which may be mentioned objections to evidence of the death of Borden, the bullet and cot offered in evidence, the taking of the pistols and clothing at Fullerton, etc. . . . ' ''

Perhaps the situation here would have been attended by greater clarity had the witness been asked to detail the circumstances of the finding of the pistol and flashlight, rather than to have called for the circumstance of the arrest, but the result is the same except possibly that there is added the testimony that defendant was arrested.

 However, we fail to see how this additional element could have prejudiced the defendant, even though it be admitted that it was not material. He was found in possession of articles resembling those which had been used in the robberies committed. His actions were suspicious—his denial of the possession of the pistol when he had in fact been seen to drop it evidenced a consciousness of guilt. Subsection 3 of section 836 of the Penal Code authorized the officers to make an arrest without warrant when they had reasonable cause to believe the defendant guilty of a felony which had in fact been committed. His arrest on

suspicion was further justified by his subsequent identification. There is another reason why appellant is precluded of complaint in this particular. Before the officer was questioned concerning the circumstances of the arrest he was asked this question: "Were you the arresting officer in this case?" to which no objection was interposed and which the witness answered in the affirmative. Later he was asked, "At the time you arrested the defendant did you have a conversation with him? Did you ask him any question?" Again no objection was interposed and the answer was that the witness' partner did. Still later and after all the circumstances had been developed it first appeared that the defendant was arrested "on suspicion of robbery," whether of the offenses charged not appearing. This last question and answer covering this testimony were withdrawn by the district attorney but still no motion was made by defendant to strike out the former testimony given that defendant was arrested. It is a fundamental rule requiring no authority to support it that appellant cannot complain of testimony which has been admitted without objection. The circumstances of finding the items were properly admitted and no objection to testimony concerning the arrest was had. Hence no error can be predicated upon the admission of either element.

Error is predicated upon remarks of the deputy district attorney during the cross-examination of the witness Taube when he said: "Objected as improper although I will say frankly that I do not blame a witness in view of the heat of the day and the nature of the examination for getting peevish. I think the examination has run to a most inordinate length. I am willing for the attorney to elicit anything that is of advantage to the defendant if he can, but it sounds to me almost that the witness is on trial rather than the defendant." We find nothing which would prejudice the rights of the defendant in this statement, but if we had there is nothing to indicate that counsel attempted to have the error corrected or that had he made such effort it would have been fruitless. In fact, in another instance where a question was asked by the deputy district attorney which counsel deemed to be prejudicial, the court, upon request, very promptly instructed the jury to disregard it. The last statement of

the district attorney assigned as misconduct made during the course of his argument is as follows: "As I said before, he did not give me much to answer, because he went too far afield. That is, not if I stick to the evidence. He did say that he would not wilfully withhold anything that he thought you ought to know, and he would not try to save a criminal from being convicted, and I think I am justified in saying, from what I know about the case, that counsel was not justified in making that statement to you. I just want to recall, while we are talking about the law and generalities. . . . " Appellant deems this a reflection upon defendant's counsel, and perhaps the deputy district attorney might have chosen other words to express his sentiment which would have been a bit more appropriate, but so far as the effect upon the jury is concerned, the statement simply means that two gentlemen differed concerning the interpretation to be put upon the testimony. We fail to find any prejudicial error.

Judgment and order affirmed.

Works, P. J., and Craig, J., concurred.