[Crim. No. 2147. Second Appellate District, Division Two.—March 28, 1932.]

THE PEOPLE, Respondent, v. NICK RADOVICH, Appellant.

Joseph L. Fainer and R. E. Parsons for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, Buron Fitts, District Attorney, and Tracy C. Becker, Deputy District Attorney, for Respondent.

FRICKE, J., *pro tem.*—Appellant was found guilty of robbery in the first degree by the verdict of a jury and, having previously been convicted of manslaughter and hav-

ing served a term of imprisonment therefor, which fact was charged in the information and admitted by appellant, he was sentenced to Folsom state penitentiary.

On April 23, 1931, at about 3 o'clock in the afternoon, three men masked with handkerchiefs entered the San Gabriel branch of the California Bank. One of the men, armed with a pistol and identified as appellant, forced C. C. Pearson, the manager, to go to the rear of the bank and ordered that the curtains on the front of the establishment be drawn. Mr. Pearson and the other employees were driven into the vault, where they were lined up facing the wall, and one of them, W. W. Spencer, was compelled to open the safe. Some $4,000 in cash, a quantity of securities belonging to clients of the bank, and a quantity of American Express Company travelers' checks were stolen in the robbery.

Appellant contends that the evidence is insufficient to justify the conclusion that he was one of the bandits. Jean Durand, one of the tellers, testified that appellant was one of the robbers and that he first saw him as he was entering the vault, at which time appellant was holding his handkerchief to his face; that appellant gave him orders what to do and at that time dropped the handkerchief down below his chin; that he had a good look at him and was sure that appellant was the man he saw that day. This witness was unable to describe the handkerchief other than to say it was light in color, and did not notice the color of the bandit's overcoat or hat. On cross-examination he stated that from the day of the robbery until he saw appellant several months later in the county jail he did not see anybody that he thought was the robber in question. The witness also testified that he saw a picture of appellant in a newspaper, but also stated that when he went to the county jail he did not expect to see there any man who had been in the bank and did not expect to see appellant; that at the jail he was shown two groups of seven men each and that appellant was in one of the groups. Another bank employee, Walter W. Spencer, identified appellant as one of the men who participated in the holdup, also testifying that he saw that portion of appellant's face from the edge of his hat to the lower part of his upper lip. On cross-examination this witness stated

that he was unable to identify either of the other two bandits, but that appellant was distinctly taller than the other two; that appellant took down his handkerchief, which he had been holding between his teeth, when he told the witness to turn around and not look at him; that he got a full view of appellant's nose and the lower part of his upper lip and of his eyes, and noticed that he had prominent "red veins" under his eyes. The witness also stated that this robber did not have a mustache, but in addition testified that he did not get a full view of the upper lip. Other testimony tended to show that on the day of the robbery appellant had a mustache, but the record does not disclose the size, color, shape, location or visibility of the hirsute appendage on his upper lip. The point, therefore, that the witness saw no mustache upon the robber whom he identifies as appellant is of little value, especially since the witness only saw "just the lower part of the upper lip", a description not necessarily inconsistent with the presence of a mustache on the upper part of the lip. It may be noted as rather significant that this witness on cross-examination also testified that during his experience as a bank teller he had not to his knowledge seen any other person who looked like the appellant, a statement which would indicate that the latter's appearance is distinctive and unusual. The evidence identifying a defendant as the perpetrator of the crime charged need not be positive and uncontradicted. As stated in *People* v. *Farrington,* 213 Cal. 459 [2 Pac. (2d) 814, 815]: "The strength or weakness of the identification, the incompatibility of and discrepancies in the testimony, if there were any, and the uncertainties of the witnesses in giving their testimony, were matters solely for the observation and consideration of the jurors in the first instance, and for the consideration of the trial court on motion for a new trial. It has approved the finding of the jury, and on appeal this court may not disturb such finding and the action of the trial court unless we can say as a matter of law that there was no evidence to support the conviction." (See, also, *People* v. *Griggs,* 114 Cal. App. 133 [299 Pac. 555]; *People* v. *Madsen,* 93 Cal. App. 711 [270 Pac. 237]; *People* v. *Bealey,* 81 Cal. App. 648 [254 Pac. 628]; *People* v. *North,* 81 Cal. App. 113 [252 Pac. 1063]; *People* v. *Wilson,* 76 Cal. App.

688 [245 Pac. 781]; *People* v. *Seawright,* 72 Cal. App. 414
[237 Pac. 796]; *People* v. *Oakleaf,* 66 Cal. App. 314 [226
Pac. 24]; *People* v. *Franklin,* 46 Cal. App. 1 [188 Pac.
607], and cases cited.) The evidence was amply sufficient
to sustain the verdict of the jury, and their conclusion, sus-
tained by the denial of the trial court of the motion for
a new trial, is final.

Appellant assigns as prejudicial error the admission
in evidence of a .38 caliber automatic pistol belonging to
him and which was found in a wardrobe trunk in his apart-
ment, with loaded shells in the magazine. The pistol was
shown to the witness C. C. Pearson, but he was unable to
make any identification of it as the one held by appellant,
except that "it might have been that but it looked to me
like a .45". The witness Jean Durand, shown the same
pistol, testified that the gun he saw held by appellant was
black, but he could not tell whether it was "an automatic
or a straight barreled revolver", but also said that it re-
sembled and had the general appearance of the gun shown
him at the trial. The witness Walter W. Spencer testified
that the gun held by appellant was an automatic, the same
color and "somewhat like" the .38 caliber automatic of
appellant which was shown to him at the trial, and that
the description of that gun and the one held by appellant
in the robbery was in general the same. This witness also
said that he did not know whether he could distinguish be-
tween a .38 and a .45 caliber gun. As between two auto-
matic pistols, identical except for a difference of 7/100 of
an inch in the diameters of the inside of the barrels, there
is so little difference that an inability to identify the cali-
ber of one of them in the absence of the other is not at
all remarkable. The effect of the evidence that the .38
automatic found in appellant's trunk resembled and had
the general appearance of the gun used in the holdup by
appellant, that it was somewhat like that gun and that the
description of the two guns was in general the same was
sufficient to render the exhibit admissible in evidence. The
law of evidence does not require that, in a case such as
we have here, the gun offered in evidence be positively
identified as the weapon used in the perpetration of the
crime, but considers the proffered exhibit admissible when
the testimony shows that the gun offered at the trial is

similar in appearance or answers the same general description. (*People* v. *Cotton,* 117 Cal. App. 469 [4 Pac. (2d) 247]; *People* v. *Elliott,* 104 Cal. App. 107 [285 Pac. 401]; *People* v. *Sampsell,* 104 Cal. App. 431 [286 Pac. 434]; *People* v. *Hale,* 81 Cal. App. 734 [254 Pac. 639]; *People* v. *Stoerkel,* 87 Cal. App. 336 [262 Pac. 825], and cases cited; *People* v. *Ferdinand,* 194 Cal. 555 [299 Pac. 341].) The case of *People* v. *Mullen,* 69 Cal. App. 548 [231 Pac. 588], relied upon by appellant, is not in point, as in that case there was absolutely no evidence which would sustain the inference that the gun received in evidence was the same or in any respect similar to the gun used in the robbery, and furthermore, the gun was not found in the possession of Mullen, but was found in the possession of one Logue, who was not connected with the crime by any evidence, but who was in the company of the defendant at the time of the arrest, and the admission of the gun in evidence was held erroneous for the reason that there was no evidence connecting the defendant with it in any way. In the case at bar the pistol was found in appellant's possession and he admitted its ownership. Possession by a defendant of means such as were used to commit the crime charged renders the same admissible even though not identified in any way by the eye-witnesses to the offense. (*People* v. *Potigian,* 69 Cal. App. 257 [231 Pac. 593]; *People* v. *Wilkins,* 158 Cal. 530 [111 Pac. 612]; *People* v. *Stoerkel, supra; People* v. *Hale, supra; People* v. *Mar Gin Suie,* 11 Cal. App. 42 [103 Pac. 951].) In the case of *Sorenson* v. *United States,* 168 Fed. 785, cited by appellant, the statement of the court that "there was nothing to connect the employment of the revolvers and other articles with the burglary" readily distinguishes that case from the one before us. The other case cited by appellant, *People* v. *Smith,* 55 Cal. App. 324 [203 Pac. 816], involving a homicide by means of cyanide, held erroneous the admission in evidence of a can of cyanide of soda and potash on the premises of defendant's employer because there was no proof that the defendant knew of the existence thereof, was not in any way connected therewith and because of evidence tending to show that the can had not been disturbed for a considerable period of time. In another poisoning case, poison such as caused the death was

found in some jars of vinegar grape juice in the basement of the house where the defendant had lived for several years, it also being shown that she frequently "put up" grape juice, and the court there held that as these jars were found where a housekeeper would naturally have placed and kept the grape juice, the exhibits were properly received in evidence. (*People* v. *Potigian, supra*. See, also, *People* v. *Wilkins, supra*.) That case like the one before us, differs from the Smith case because of the presence of proof, absent in the Smith case, tending to connect the accused with the exhibits. We see no error in the admission of the gun in evidence. ■ Furthermore, appellant was not prejudiced by the reception in evidence of the weapon. The deputy sheriff who found the pistol in appellant's trunk testified without objection to the fact and circumstances of its discovery, and during his examination the weapon was shown to him and prior to that to other witnesses, and was seen by the jury. The admission of the weapon in evidence, therefore, added little or nothing to the impression already in the minds of the jurors.

■ Appellant's third point is that the trial court erred in sustaining objections to questions which would have tended to impeach the testimony of the witness Charles Malaby. This witness testified that he was an investigator for the sheriff's office and was introduced to appellant by the latter's co-defendant, Tony Deus, some time in May following the robbery; that appellant told him he had a lot of American Express checks and stock certificates and "other stuff" and asked Malaby if he could sell it; that thereafter appellant brought to Malaby a book of ten $10 American Express checks, three stock certificates and a list of what appellant had to sell; that thereafter Malaby was requested to and did return to appellant the book of express orders; that later Malaby said he thought he had a deal on the express orders and arranged to meet appellant on the following day; that he met appellant on the following day, handed the three certificates back to him and a few minutes later an officer came up and made the arrest. On cross-examination Malaby admitted that he had previously been convicted of a felony and that he was not working for the sheriff's office when he first met appellant. It also appears that while he had the book of trav-

elers' checks in his possession Malaby showed it to a Mr. Purcell, an agent of the express company, who wrote down the numbers of the checks which were shown to be a part of the property stolen in the robbery. On cross-examination Malaby was asked whether he had ever had any of the stolen checks of $20 denomination and he answered in the negative. We may here interject that the subject of checks in denominations of $20 could not be made the basis of impeachment or cross-examination, because Malaby at no time claimed to have received any such checks from appellant. It may be noted here that while, when first asked as to when he met appellant, Malaby fixed the time as the latter part of May, upon further questioning he testified that he could not fix the time any more definitely than that it was some time in May; that he was not sure that it was after May 15th, but that it was not in April. The court sustained an objection to a question as to whether on or about May 7, 1931, at the home of Miss Dinwiddie, Malaby had asked a Mr. McGregor whether he knew anybody who would loan money on the stock certificates, exhibits 1 and 2 (part of the property stolen in the robbery), and whether Miss Dinwiddie had not asked Malaby whether the transaction was legitimate. The sustaining of these objections and the striking of the answers relating to the $20 travelers' checks heretofore referred to is assigned as error, it being appellant's contention that they were proper as laying a foundation for impeachment upon a material matter. In this connection appellant contends that had he been allowed to pursue his plan of impeaching the witness the evidence would have tended to show that Malaby had the checks and securities prior to the time when he claimed he received them from appellant.

The law is well settled that a witness may be impeached by evidence that he has previously made statements inconsistent with his testimony at the trial as to a material matter. Appellant's theory is that a discussion or showing by Malaby of the stolen checks and securities to Mr. McGregor prior to the time when he claimed to have received them from appellant would tend to impeach him. The infirmity of this contention lies in the fact that there is no basis for the assumption that the alleged incident at the home of Miss Dinwiddie ''on or about the night of May

7, 1931'', ''near the 7th of May, 1931'', ''on the evening of on or about May 7th of this year'', or ''on the evening of May, 1931, or about that date'', took place prior to the time when, according to his testimony, Malaby received the property from appellant. Had the latter been content with the original answer of Malaby on direct examination, that he made the acquaintance of appellant some time in the latter part of May, that answer would have been favorable to his present contention. But he was not satisfied, and on cross-examination further pursued the matter with the result that the witness testified that he could not fix the date any closer than that it was some day in May. As the receipt of the checks and certificates from appellant some day in May is not inconsistent with his showing this property to a third person at a time fixed by the elastic and indefinite phrase ''on or about'' the 7th of May, the ruling of the court was correct. Unless there was proof that the incident of ''on or about'' May 7th was prior to the transaction with appellant there would be no inconsistency and consequently no right to pursue the proposed impeachment. Generally, the date of a prior inconsistent statement of a witness is not of much importance, but where, as here, the alleged inconsistency lies in the priority of one transaction over another, such priority must be established. In the record before us the priority of the one incident over the other is left a matter of pure conjecture. It might also be added that notwithstanding the lack of foundation Miss Dinwiddie testified to the incident of seeing Malaby with the stock certificates about May 7th, so that appellant had the advantage thereof without meeting the requirements of the rules governing impeaching testimony.

Appellant's final point is that the court committed error in the reception of hearsay evidence. The witness Malaby testified that the day after receiving them from appellant he took the book of travelers' checks to a Mr. Purcell of the American Express Company and that Mr. Purcell took the checks to his office and wrote down some numbers. There was no objection to this line of testimony by appellant except to the preliminary question, ''When you showed these travelers' checks to Mr. Purcell of the American Express Company did you see Mr. Purcell do

anything?'' The objection was made by a motion "to strike that on the ground that it is hearsay, incompetent, irrelevant and immaterial, not proper redirect examination". After a statement by the prosecutor as to the purpose of the question appellant's counsel stated: "We might as well let the witness testify if the district attorney is going to say what he did," and the court then overruled the objection. The answer to the question quoted was never given, for the prosecutor, following the court's ruling, propounded the question: "Did you see Mr. Purcell do anything at the time you exhibited the travelers' checks to him?", which question and the ensuing questions concerning the writing down of the number were put to the witness and answered without objection. Counsel did move to strike out one answer of the witness to the effect that "he was writing the number", on the ground that the witness did not know what Mr. Purcell wrote, but upon the witness stating in response to a question from the court that "I seen him writing the number down," this motion was denied. It appears, therefore, that the testimony here complained of was received without objection. The testimony was, however, not objectionable when its relationship to other testimony is taken into consideration. W. J. Purcell, special agent for the American Express Company, testified that he was shown a book of $10 travelers' checks of his company and that he made a memorandum of the numbers. Defense counsel requested the witness upon his return to court to bring with him the record of the travelers' checks that were sent to the bank and the record of the report of the loss of those checks. Later the witness was again put upon the witness-stand and he then produced a list which he described, without objection, as a list of the checks taken in the robbery, and then, without objection (an objection was made but withdrawn before the answer), testified that he compared the list with the checks shown him by Malaby and that the latter checks appeared on said list. The testimony of Malaby that Mr. Purcell had compared the numbers of the checks with a list of those stolen from the bank was in no sense hearsay testimony and was admissible for the purpose of showing that the checks which were shown to Purcell were the very ones which Malaby had received from appellant, and was part

of a chain of evidentiary facts, including those in the testimony of Mr. Purcell, leading to the conclusion that the checks received by Malaby from appellant and found on the list of stolen checks were a part of the checks stolen in the robbery. The argument that the list of checks was hearsay is unavailable here because, as noted above, the testimony of Purcell as to the nature of the list was received without objection, and it is elementary that objection cannot be made for the first time on appeal, and, furthermore, because Malaby did not testify to the contents of Purcell's list. If we have misunderstood counsel and their argument is directed to the list of securities in the possession of Malaby, the argument is equally inapplicable in view of the testimony that this list was handed to Malaby by appellant as a list of the securities he desired to sell. We have not been referred to any testimony given by the witness Malaby as to the contents of that list, and it appears that, as exhibit 10, the list itself was received in evidence, thus eliminating any possible prejudice to appellant by reason of any secondary evidence of its contents. The point is without merit.

The judgment and order denying a new trial is affirmed.

Works, P. J., and Craig, J., concurred.