[Crim. No. 2322.   First Dist., Div. Two.   Sept. 28, 1945.]

THE PEOPLE, Respondent, v. JOHN BELTOWSKI, Appellant.

C. F. Eschwig for Appellant.

Robert W. Kenny, Attorney General, and David K. Lener, Deputy Attorney General, Edmund G. Brown, District At-

torney, and Alvin Weinberger, Deputy District Attorney, for Respondent.

GOODELL, J.—The appellant John Beltowski and one Tony Castropil were jointly accused by information, of robbery. By a separate information one Earl Swanson was charged with the same offense. The three defendants were tried together before a jury and were convicted and sentenced to the state prison. Beltowski is the only defendant who has appealed.

On Saturday evening, March 11, 1944, about 8:30, William F. Lazootin was sitting alone in his store on DeHaro Street in San Francisco. Three men entered, one of whom, later identified by Lazootin as Beltowski, pointed a pistol at him, twice pressed it against his body and demanded money. Another, later identified by Lazootin as Swanson, made the same demand, went to the cash register and emptied it of everything ($37) "including pennies" and turned it all over (less a $5.00 bill which fell to the floor) to one of the others. Lazootin testified that they were in the store not less than ten minutes.

The next day Beltowski and Castropil were arrested in a Market Street rooming house, where they were found with Beltowski's wife and another woman. In the room were found several pistols, a dismantled shotgun, some shells, some money, three caps (headgear) and other miscellaneous things.

Before trial the police officers investigating the case took a typewritten, question-and-answer statement from Castropil in which he admitted his part in the robbery and stated that Swanson (whom he named therein as "Eddie") was a party to it, together with Beltowski. When Swanson was brought back from San Diego, whence he had gone on March 13, he added his signature to that of Castropil on the statement. Beltowski never signed it, and when it was read to him by the police before the trial he said "I have nothing to say." Castropil and Swanson at the trial admitted having signed the statement but Castropil testified that it had been forced from him by the police by physical violence and by threats of further beating. At the trial all three defendants denied any connection with the holdup.

It is claimed that "as to appellant Beltowski nowhere has the corpus delicti been proven." "The rightful meaning of this term is 'the body, the substance, the essential elements

of the crime.' '' (*People* v. *Watters*, 202 Cal. 154, 157 [259 P. 442].) Lazootin, the victim, within the first few minutes of the trial testified to the entry of the three men, the pressing of the pistol against his side, the demand for money and the taking of $32 in his immediate presence. That testimony established prima facie the body of the offense and all the elements of it (Pen. Code, § 211.) "Proof of the '*corpus delicti*' is proof that a crime has been committed by someone." (*People* v. *Locurto*, 97 Cal.App. 185, 191 [275 P. 462]; see, also, *People* v. *Davis*, 47 Cal.App.2d 331, 335 [117 P.2d 917], and 8 Cal.Jur. § 247, p. 166.)

■ It is next claimed that there is an insufficiency of the evidence as to the identification of the appellant. Counsel claims that "If the statements of Castropil and Swanson were thrown out there would not be a shred of evidence connecting appellant Beltowski with the crime." This is not true, for the complaining witness, in his testimony that a robbery had been committed *by someone*, identified "the big fellow," Beltowski, as the man who had held the pistol against his side.

■ While the identity of the perpetrator of a crime is no part of the corpus delicti (*People* v. *Meyers*, 7 Cal.App.2d 351, 354 [46 P.2d 282], and cases cited) still, as said in 8 California Jurisprudence, page 166, section 247, ". . . proof of the criminal agency frequently involves proof of the defendant's guilt." (See, also, *People* v. *Spencer*, 58 Cal.App. 197, 221 [208 P. 380].) Thus in this case, the same testimony that established "the body, the substance, the essential elements of the crime" connected the appellant with its commission.

The testimony shows that the store was well lighted by electricity. Lazootin testified that "the big man came first" and he pointed, in the presence of the jury, to the appellant. He repeated "This guy first," and testified that he wore a Russian cap with a badge in front, and had the pistol. Swanson, he said, came in second and Castropil last. He told how each was dressed, and how each wore a Russian cap of the same type. None was masked, but Beltowski, according to Lazootin, held his hand over his mouth. When asked on cross-examination if he could tell the color of the hair of the three men, Lazootin answered "I saw their faces as they are now, but I didn't see the hair because they had the caps on their head."

■ The next morning when the officers went to the lodgings of Beltowski and Castropil they found there "some dark caps, something like a chauffeur's cap." At the trial one of

the officers testified that the three caps then shown were "if not the exact caps, they are exact duplicates of the caps." In fact, he said, "one has a button on I wondered about at the time myself."

Two days after the robbery, Lazootin and his wife arrived at police headquarters while an inspector was interrogating Beltowski and Castropil. The inspector was about to ask Lazootin if he had ever seen the two men before, when Lazootin excitedly interrupted him and pointed two fingers at the two men. The inspector asked if he was sure and he answered "yes." "He says they had caps on, Russian caps, indicating they had caps on at the time of the hold up." The inspector then had them put on the caps, and Lazootin indicated Beltowski, and "went through the same gestures as he did this morning about holding the hand and the gun in his hand." The three caps were admitted in evidence over objection. They were of course admissible, for they formed one of the links in the chain of identification. "Wearing apparel of the accused is admissible in evidence, provided some connection between it and the accused, and between it and the supposed crime is shown." (8 Cal.Jur. § 229, p. 145.) The complaining witness by direct testimony identified the appellant at the trial.

Counsel for appellant says: "Complaining witness' story is improbable as to the men remaining in his store at least ten minutes to rifle a cash register. It does not take that length of time to clean the contents of a cash register. This point is made to show the improbability of his identifying the men who held him up. . . . Especially improbable as to the length of stay of the men who robbed him when he states no customers came in the store during the time they were there." In the first place these were purely jury questions. Secondly, the longer they were in the store, the better the opportunity for certainty of identification. It is argued that Lazootin has eyesight in only one eye and he so testified, but the strength or weakness of the identification is a matter for the determination of the jury. (*People* v. *Farrington*, 213 Cal. 459, 463 [2 P.2d 814]; *People* v. *Radovich*, 122 Cal.App. 176, 179-180 [9 P.2d 542], and cases cited.) In *People* v. *Braun*, 14 Cal.2d. 1, 5 [92 P.2d 402], it is said, "To entitle a reviewing court to set aside a jury's finding of guilt, the evidence of identity must be so weak as to constitute practically no evidence at all. (*People* v. *Farrington*, 213 Cal. 459 [2 P.2d 814]; *People* v. *Friday*, 18 Cal.App.2d 197 [63 P.2d 303].) In a case such as

the present one, where there is positive direct testimony that the defendant was one of the perpetrators of the crime, it is incumbent upon him to show that the testimony is inherently unbelievable in order to prevail.'' The proof of identification was sufficient.

The appellant urges that the pistol admitted in evidence was not identified by Lazootin, who testified that the weapon was either black or brown. Apparently none of the pistols found in the lodgings of Beltowski and Castropil met this specification and from this fact the appellant argues that the proof broke down, citing *People* v. *Mullen,* 69 Cal.App. 548 [231 P. 588]. That case is distinguishable from this because there the weapon was not found in the defendant's possession. It was found in the possession of one Logue, who was not connected with the crime by any evidence, but who was in the company of the defendant at the time of the arrest. The admission of the gun in evidence was held erroneous for there was no evidence connecting the defendant with it in any way. (See *People* v. *Radovich, supra,* and *People* v. *Davis,* 106 Cal.App. 179, 189 [289 P. 194] where the Mullen case is distinguished.) Here, however, two or three pistols were found in Beltowski's room (together with other arms and ammunition) at the time of the arrest. (See *People* v. *Nakis,* 184 Cal. 105, 113, 114 [193 P. 92].) It was proper for the prosecution to lay before the jury all the circumstances surrounding the arrest. (*People* v. *Mar Gin Suie,* 11 Cal.App. 42 [103 P. 951]; *People* v. *Stoerkel,* 87 Cal.App. 336, 340 [262 P. 825].) Nor need there be positive identification of a weapon. (*People* v. *Ferdinand,* 194 Cal. 555, 563, 564 [229 P. 341].) The possession by a defendant of means such as were used to commit the crime renders the same admissible even though not identified in any way by the eyewitness to the offense. (*People* v. *Radovich, supra,* and cases cited. (*People* v. *Hale,* 81 Cal.App. 734, 735 [254 P. 639]; *People* v. *Stoerkel, supra; People* v. *Mar Gin Suie, supra; People* v. *Hightower,* 40 Cal.App.2d 102, 107 [104 P.2d 378].) In *People* v. *Abbey,* 124 Cal.App. 412, 417 [12 P.2d 655], the victim did not even see the gun, which was concealed in the defendant's coat pocket. It was nevertheless held admissible.

By way of alibi the appellant, his wife, the other woman and Castropil gave testimony to the effect that between 8 and 9 o'clock on the evening in question both the appellant and Castropil were in or near the room on Market

24

Street. Had the jury believed this testimony an acquittal doubtless would have followed. Such testimony raised a conflict which the jury resolved against the appellant and its finding cannot be disturbed on appeal. (*People* v. *Spillard*, 15 Cal.App.2d 649, 652 [59 P.2d 887].)

▉ The information alleged that in 1942 Beltowski had been convicted of the crime of robbery in Alameda County, and in entering his plea of not guilty he admitted it. Under cross-examination he admitted having been convicted of four felonies, one of which was robbery. Objection was made to the testimony given by an officer that "They [the defendants] were going to tell me all about their crimes in San Francisco, this one and others that they committed." This and other testimony touching on other offenses was not prejudicial in view of the admissions of four prior convictions.

▉ It is claimed that the admission in evidence of Castropil's statement was prejudicial error. The statement incriminated both the appellant and Swanson. It showed that Beltowski had the pistol and that Swanson took the money out of the cash register while Castropil stood in front of Lazootin "so they wouldn't see the man was being held up from the street." This, of course, was damaging to the appellant. Counsel who represented all three defendants objected to the introduction of the statement *as to Swanson* but not as to this appellant. When it was being offered the defense started to make a *general* objection, whereupon the prosecution interrupted with the suggestion that the defense had the right to cross-examine the inspector (under whose examination it was being identified and offered). Counsel adopted this suggestion and carried on a rather extensive preliminary cross-examination as to the circumstances under which the statement was obtained from Castropil. It was after this that the statement was read and introduced, and it went into evidence without any objection on behalf of the appellant. The corpus delicti had been proved at the very outset of the trial. As already stated, the appellant had not signed the statement, nor acceded to anything it contained, and he flatly denied participation in the robbery. Nevertheless, there was no objection and we see no error in its admission.

The judgment is affirmed.

Nourse, P. J., and Dooling, J. pro tem., concurred.