[Crim. No. 3554.   First Dist., Div. Two.   June 15, 1959.]

THE PEOPLE, Respondent, v. THOMAS CLOYD
NICHOLS, Appellant.

William D. Piercy, under appointment by the District Court of Appeal, and Piercy & Rogers for Appellant.

Stanley Mosk, Attorney General, Clarence A. Linn, Assistant Attorney General, and Peter T. Kennedy, Deputy Attorney General, for Respondent.

KAUFMAN, P. J.—Defendant appeals from a judgment of conviction entered on a jury verdict finding him guilty of robbery in the first degree. He also appeals from the order denying his motion for a new trial. He contends that the judgment must be reversed because the prosecution announced to the jury that his associate Winslow had pleaded guilty and introduced into evidence guns not connected with him or the crime.

The circumstances of the robbery are as follows: About 11:45 p.m. on Saturday, January 25, 1958, two men robbed the Cataffo Market at 2301 Van Ness Avenue at the corner of Vallejo Street in San Francisco. The robbers took Mr. Cataffo's wallet and about $90 from the cash register. Mr. Cataffo identified the defendant as the armed robber who had ordered him into the back room and had taken his wallet. Mr. Gubbins, a newsvendor, who was standing outside the Cataffo Market, was forced into the store at gunpoint by the two robbers. Mr.

Gubbins identified the defendant as one of the men. A Mr. Schade was on his way to the Cataffo Market. He noticed a greenish blue '52 or '53 car with its motor running and the lights out parked on Vallejo Street. He entered the store while the robbery was in progress. One of the robbers who was standing by the cash register with a gun in his hand ordered him to the rear. Mr. Schade identified the defendant as the man behind the cash register wearing a red and black cap.

The following evening, about 11:50 p.m. while on patrol, Police Officer Tompkins and Inspector Jones saw three persons in a greenish blue DeSoto on the 2900 block of Mission Street. As they passed the car they noticed that it had a rear license plate but no front license plate and that the man at the wheel was a man they had known in the past. Two of the passengers got out of the car. The policemen turned around and asked all three to identify themselves and to explain their reasons for being in that location. The driver of the car was Mr. Winslow; the defendant and a Mr. Sweeden were the two passengers. In the course of the questioning, Winslow attempted to flee but was apprehended.

Officer Tompkins found two loaded guns under the front seat on the passenger side of the car. Winslow stated that the guns were his and that he was trying to sell them. The defendant stated that the car belonged to his wife and that he was Winslow's stepfather and that Winslow was wearing his coat. All three were arrested. Several days later, Winslow's car, a blue 1948 Plymouth, was found parked in the back of 323 Noe Street next door to the defendant's home at 325 Noe Street. Two coats and a black checkered cap were found in this automobile.

By information, T. E. Winslow and the defendant were charged with armed robbery. Both entered pleas of not guilty. Before the trial Winslow pleaded guilty and was sentenced.

Defendant's first contention on appeal relates to the following which occurred on the cross-examination of the defendant:

"Q. Do you recall who you were with at the time you were arrested? A. I sure do.

"Q. You sure do. And who were you with? A. Mr. Winslow and Mr. Sweeden.

"Q. They were Winslow, the same man who was identified in this case as being in the Cataffo Grocery and who had pleaded guilty to the charge of robbery, is that correct?

"MR. KARESH: If Your Honor please, I feel that is a highly prejudicial statement.

"MR. REICHERT: I don't see how it is.

"THE COURT: There is nothing before in the record that indicates that any defendant has pleaded guilty. I do not believe so, Mr. Reichert. Mr. Winslow was identified, that is true, by the testimony.

"The Court will sustain the objection to the question and admonish the jury to disregard the statement of the District Attorney that anybody has been found guilty of this robbery, particularly Mr. Winslow. You are to disregard that statement, not to take it into consideration in deciding the issues of this case."

The fact that Winslow was the other participant in the robbery was first brought out by defendant's counsel on the cross-examination of Mr. Gubbins. Then, the witness Schade, in reply to the district attorney's question, stated that the other robber was Winslow. Defendant's counsel repeated the reference to Winslow several times on cross-examination of Schade. During the course of this cross-examination, defendant's counsel asked that the newspaper pictures of defendant, Winslow and Sweeden be admitted into evidence, and stipulated that the newspaper article accompanying the pictures be put into evidence. After the introduction of the picture, defendant's counsel further questioned the witness about Winslow.

Defendant relies on *People* v. *Bearss*, 10 Cal. 68; *People* v. *Collum*, 122 Cal. 186 [54 P. 589] ; and *People* v. *Ford*, 89 Cal. App.2d 467 [200 P.2d 867]. The two former cases were decided before the enactment of section 4½ of article VI of the state Constitution. ■ The nature of the error that requires a reversal under this provision is that there is a miscarriage of justice "only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People* v. *Watson*, 46 Cal.2d 818 at 836 [299 P.2d 243].)

■ In *People* v. *Ford, supra,* a conviction of grand theft was reversed because of the prosecutor's stating in his argument to the jury that the defendant's acquaintance had been convicted of possessing the stolen property, even though the statement was not assigned as misconduct and the court was

not requested to admonish the jury to disregard it. In that case, however, the evidence of defendant's guilt was slight aside from his confession which was given under circumstances indicating that it was involuntary.

In the instant case, three eyewitnesses identified the defendant as one of the participants in the robbery. There was also other evidence of defendant's guilt. The jury here specifically returned for the purpose of rehearing the evidence of the three eye-witnesses, and then deliberated for several hours before returning their verdict. Furthermore, as we pointed out above, the identification of Winslow was first and repeatedly introduced into the record by defendant's counsel. While we agree with the defendant that the courts must exercise a restraining influence on the conduct of overzealous prosecutors, we do not think that in the instant case the remark complained of was an incurable error. Defendant argues that the district attorney's remark about Mr. Winslow's plea of guilty created incurable prejudicial error. ■ As we recently said in *People* v. *Daniel*, 169 Cal.App.2d 10 at p. 12 [336 P.2d 556], there is no definite rule by which asserted misconduct may be measured for the purpose of determining whether it prevented the defendant from having a fair and impartial trial. ■ There we also held that prompt admonishment by the trial court to the jury to disregard the statement cured the error. We think that here likewise the error was cured by the timely admonition to the jury.

■ Defendant's second contention on appeal relates to the introduction into evidence of the weapons found in the car at the time of the arrest. The two guns found were nickel plated .38 revolvers. There was very little description of the guns used in the crime and no witness testified as to the similarity between the weapons used and People's Exhibits 9 and 10. The police report on the basis of the descriptions given by various witnesses developed a composite description of the weapons used as a gray steel .32 revolver and a blue steel automatic.

Defendant argues that these guns could not have been properly admitted into evidence even if they had been owned or possessed by the defendant, since they were not similar to the ones used in the robbery, citing *People* v. *Richardson*, 74 Cal.App.2d 528 [169 P.2d 44] and *People* v. *Riser*, 47 Cal. 2d 566 [305 P.2d 1]. In the instant case, the uncontroverted evidence establishes that the guns belonged to Winslow, but were found in the defendant's car. Defendant admitted

knowing Winslow and stated he might have had dinner with Winslow about 10 p. m. on the night of the robbery.

■ The rule as announced in *People* v. *Riser*, 47 Cal.2d 566, at 577 [305 P.2d 1] is as follows:

''When the specific type of weapon used to commit a homicide is not known, it may be permissible to admit into evidence weapons found in the defendant's possession some time after the crime that could have been the weapons employed. There need be no conclusive demonstration that the weapon in defendant's possession was the murder weapon. (*People* v. *Ferdinand*, 194 Cal. 555, 563 [229 P. 341]; *People* v. *Nakis*, 184 Cal. 105, 113-114 [193 P. 92].) ■ When the prosecution relies, however, on a specific type of weapon, it is error to admit evidence that other weapons were found in his possession, for such evidence tends to show, not that he committed the crime, but only that he is the sort of person who carries deadly weapons. (*People* v. *Riggins*, 159 Cal. 113, 121 [112 P. 862]; *People* v. *O'Brien*, 130 Cal. 1, 5 [62 P. 297]; *People* v. *Yee Fook Din*, 106 Cal. 163, 165-167 [39 P. 530]; *People* v. *Wong Ah Leong*, 99 Cal. 440 [34 P. 105].)''

■ Here the prosecution did not rely on a specific type of weapon and therefore the former rule would appear to be the proper one. ■ We think this case is similar to *People* v. *Beltowski*, 71 Cal.App.2d 18, where the court said at page 23 [162 P.2d 59]:

''Here, however, two or three pistols were found in Beltowski's room (together with other arms and ammunition) at the time of the arrest. [Citation.] It was proper for the prosecution to lay before the jury all the circumstances surrounding the arrest. [Citations.] Nor need there be positive identification of a weapon. [citation] The possession by a defendant of means such as were used to commit the crime renders the same admissible even though not identified in any way by the eye-witness to the offense. (*People* v. *Radovich*, *supra*, [122 Cal.App. 176 (9 P.2d 542)], and cases cited; *People* v. *Hale*, 81 Cal.App. 734, 735 [254 P. 639]; *People* v. *Stoerkel*, *supra*, [87 Cal.App. 336 (262 P. 825)]; *People* v. *Mar Gin Suie*, *supra*, [11 Cal.App. 42 (103 P. 951)]; *People* v. *Hightower*, 40 Cal.App.2d 102, 107 [104 P.2d 378]. In *People* v. *Abbey*, 124 Cal.App. 412, 417 [12 P.2d 655], the victim did not even see the gun, which was concealed in the defendant's coat pocket. It was nevertheless held admissible.''

No prejudicial error appearing in the record before us, the judgment and order denying motion for new trial are hereby affirmed.

Dooling J., and Draper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 12, 1959. Peters, J., was of the opinion that the petition should be granted.