[Crim. No. 1524. First Appellate District, Division Two.—February 25, 1929.]

THE PEOPLE, Respondent, v. JOHN LOCURTO, Appellant.

W. E'. Foley and A. Andreucetti for Appellant.

U. S. Webb, Attorney-General, and Emery F. Mitchell, Deputy Attorney-General, for Respondent.

NOURSE, J.—The defendant was tried before a jury upon an information charging a misdemeanor in the maintenance of a common nuisance. Upon the verdict of guilty

he was sentenced to one year's imprisonment and to pay a fine of one thousand dollars. From the judgment and from the order denying his motion for a new trial the defendant has appealed upon typewritten transcripts.

The facts are fairly stated in respondent's brief, from which we quote: "On the evening of July 19, 1928, two federal prohibition agents drove into the yard of the premises situated at the corner of San Salvador and Race Streets in the City of San Jose. The defendant John Locurto was at that time coming out of the back door of the house, and told the agents that they were on the wrong side of the fence. The defendant then got into his machine and drove out into the street and then turned into the yard next door. The agents followed shortly after.

"When the agents entered the house the defendant was standing at the bar, and one of the agents laid a dollar on the bar, and asked the defendant to drink with them. The defendant, who was playing one of the slot machines, turned around and had a drink of whiskey. The agent paid 75c for this round of three drinks, and received his change.

"The defendant then told the bartender to serve another round of drinks. No one paid for these drinks. The agent then purchased another round of drinks for the three present, and the defendant next ordered a round of drinks, but tendered no money in payment for the same.

"Another round of drinks was served, and the agent tendered a $20.00 bill in payment to the bartender for the same. The bartender told the defendant that he was short of change, and defendant took some money out of his pocket and $6.00 he had won in the slot machine, making about $10.00 in all and laid it upon the bar. This the bartender put in the till and returned no money or receipt to the defendant.

"It was also proved that the agent purchased liquor prior to the date in question, and at various times had seen others purchase liquor there.

"In addition to the defendant's acts of proprietorship, as evidenced by the ordering of drinks without payment for the same and the furnishing of change to the bartender, it was proved that in a conversation with the agents the defendant said: 'No, I am not going to move so long as they let me alone here.'

"By People's Exhibit B introduced into evidence it was proved that the defendant John Locurto had been one of two or three defendants named as owners of the business conducted on the premises in question, and that a decree enjoining the defendant and others and abating the basement of the house where the agents purchased the liquor had been filed and entered on January 31, 1928.

"In the cross-examination of the defendant John Locurto the defendant designated the house in which the liquor was sold on July 19th to the agents as 420 Race Street, and denied ever having owned or claiming to have owned the same. Whereupon People's Exhibit C was introduced into evidence. This was an affidavit for justification of bail in the Justices Court of San Jose Township filed July 2, 1928, in which the defendant made oath that he owned two unencumbered houses and lots at 420–410 Race Street."

It should be added that during all the time in question the property stood in defendant's name and was commonly known as "Locurto's Place." As is usual in cases of this character an unrecorded deed was produced. This deed purported to convey the property to the defendant's brother-in-law and was dated a short time prior to the date mentioned in the information. Testimony was also given of a purported lease to another individual executed by this brother-in-law at a time when he was not the record owner of the property.

We should not be understood as implying that any of the testimony outlined was not contradicted. It was denied in nearly every particular. Some of defendant's witnesses were so profuse in their denials that they seemed to be talking about a place in another county. That the place was operated for the illegal sale of intoxicating liquor was admitted by all. The testimony relating to the mixed ownership and proprietorship of the place was such that the jury could determine the issue either way, depending upon what credence they should give the various witnesses.

Appellant makes a preliminary attack upon the information, insisting that it does not charge a public offense. This information reads: "The District Attorney of the County of Santa Clara, State of California, hereby accuses John Locurto of a misdemeanor, to-wit: Maintaining a common nuisance in that, on or about the 19th day of July, A. D.

1928, in the County of Santa Clara, State of California, the said defendant did wilfully and unlawfully maintain a common nuisance, to-wit: that said defendant on Race Street, in the County of Santa Clara, State of California, kept and maintained a place and building where intoxicating liquor, to-wit: whiskey was sold. That the act hereinbefore complained of was and were then and there prohibited and unlawful.'' The statute applicable to the case is section 21 of the Volstead Act as adopted into the laws of this state by the Wright Act (Stats. 1921, p. 79), enacted by the state legislature and approved by the electors on a referendum. This section reads in part: ''Any room, house . . . or place where intoxicating liquor is manufactured, sold, kept or bartered in violation of this title, and all intoxicating liquor kept and used in maintaining the same, is hereby declared to be a common nuisance, and any person who maintains such a common nuisance shall be guilty, etc.'' (41 Stats. at Large, p. 314 [27 U. S. C. A., sec. 33].) The section denounces the maintenance of any place where intoxicating liquor is manufactured, sold, or kept in violation of the provisions of the same statute; it recognizes the provisions of the act which authorize the manufacture, sale and keeping of intoxicating liquors under license for certain purposes and under certain restrictions.

The information specifies but one element of the crime as thus defined—the maintenance of a place where intoxicating liquor was sold in violation of law. In charging the unlawful maintenance of a place where intoxicating liquor was sold the information charged one of the specific acts, or the ultimate fact, which constitutes the crime as denounced by the statute. The only act which was necessary to constitute the crime under the statute was the unlawful keeping of the place where intoxicating liquor was sold contrary to law, and this being so the information charged a public offense when it charged the unlawful commission of that act. No demurrer having been filed and no motion for arrest of judgment having been made we are concerned here merely with the question whether the information charges a public offense. We hold it sufficient upon the well-settled rule that ''no more is required of a criminal pleading than that 'it be direct and certain, and allege all the acts and facts which the legislature has said shall constitute the of-

fense charged.' " (*People* v. *Frankovich,* 64 Cal. App. 184 [221 Pac. 671], quoting from *People* v. *Fowler,* 88 Cal. 136, 138 [25 Pac. 1110].)

■ The appellant argues that the information is insufficient because it does not allege that he was maintaining a place where liquor *is* sold. The information was filed on August 24, 1928, and charged an act committed on July 19, 1928. It was properly framed in the past tense charging that on that day appellant maintained a place where intoxicating liquor was sold. If it was uncertain because it did not appear whether the liquor was sold on that date or on some date in the distant past, that was a matter for a special demurrer.

■ Further criticism is made because it was not alleged that the liquor was "kept for sale" on the premises or that the place was maintained "for the purpose" of keeping and selling liquor. This was not necessary. Selling and keeping intoxicating liquor in violation of the statute are distinct offenses under section 21, and nowhere is it made an element of the offense that the place must be maintained for the "purpose" of either selling or keeping it. ■ That the information does not charge that more than one sale was made does not affect its legal sufficiency because, under circumstances to be proved at the trial, evidence of one sale may be sufficient to constitute the crime. (*People* v. *Mehra,* 73 Cal. App. 162, 170 [238 Pac. 802]; *Barker* v. *United States,* 289 Fed. 249, 250; *People* v. *Colombo,* 82 Cal. App. 485, 488 [255 Pac. 846].)

The information is substantially in the language of the statute and contains a statement of the acts constituting the offense "in such manner as to enable a person of common understanding to know what is intended." (Pen. Code, sec. 950, subd. 2; *People* v. *Frankovich,* 64 Cal. App. 184, 188 [221 Pac. 671].) No more is needed to make it free from attack on this appeal when the point was not raised by demurrer in the court below.

■ We find no merit in the appellant's contention that the evidence is insufficient to sustain the verdict. The portions of the evidence upon which the statement of facts is based support the jury's verdict in every essential element. Counsel for appellant seem to enjoy their frequent reflections upon the character of the witnesses produced by the prosecu-

tion. They refer to these witnesses as "exceedingly disreputable and strongly impeached." To prove that the chief witness for the prosecution was "disreputable" they offered testimony that before he became a federal agent he had been a "bootlegger." This testimony came from witnesses who had been convicted and served time for "bootlegging," or who freely confessed on the stand that they had been engaged in that illegal vocation. Two deputy sheriffs were called by appellant for the purpose of impeaching the testimony offered by the prosecution, but they completely discredited themselves by their apparent aversion to the efforts of the federal government to enforce the law and their interest in the appellant's affairs. The one reputable witness called by the defense to prove the bad reputation of the chief witness for the state unexpectedly testified that "it has always been alright."

We might add that nothing is to be gained by discussions of this character in the briefs on appeal. The matter of the credibility of the witnesses is one which must be determined by the jurors who have the witnesses before them and may judge their truthfulness by their appearance on the stand and the evidence in the case.

Criticism is made of the ruling of the trial court in admitting testimony of admissions made by appellant. It is argued that this testimony came in before the "*corpus delicti*" had been established. The point is without merit. "*Corpus delicti*" means the body of the crime. Proof of the "*corpus delicti*" is proof that a crime has been committed by someone. In this case the body of the crime was that a place was maintained by someone where intoxicating liquor was unlawfully sold. Proof that the appellant was the one who maintained the place was not necessary to prove the "*corpus delicti*." The admissions received in evidence were for the purpose of proving that appellant was the one who was responsible for the crime which had previously been shown to have been committed.

Other criticisms of the rulings of the trial court do not require discussion. The testimony now objected to was either pertinent and properly admitted over objection, or it was received without objection by appellant.

The trial court fully instructed the jury on the matter of the burden of proof. It refused the instruction

requested by appellant to the effect that if the evidence proved that Mike Horn maintained the place the verdict should be not guilty. The proposed instruction was improper. Mike Horn may have maintained and conducted the place before or after the date mentioned in the information, but this would not absolve appellant of the charge that he maintained it at that time. The proposed instruction on the use of the oral admissions of the appellant was based upon a misconception of the law relating to the "*corpus delicti*," as heretofore pointed out. The trial court properly rejected it. ■ The record in the abatement proceedings was put in evidence upon stipulation of appellant. It was evidence tending to impeach the testimony of appellant and of two of his witnesses. To have given appellant's proposed instruction that it should not be considered as evidence for any purpose would have been clear error.

■ Appellant tendered an instruction reciting that he had offered testimony tending to show that he was not present at the place at the time the liquor was alleged to have been sold and that "it is sufficient if the testimony introduced by the defense raises a reasonable doubt in your minds as to whether or not John Locurto was present at the time and place alleged in the information." The proposed instruction was properly rejected. The jury, of course, is not limited to the testimony offered by the defendant in support of his alibi defense or upon any other issue of the case. (*People* v. *Foster*, 198 Cal. 112, 127 [243 Pac. 667].)

Criticisms are directed to the charge given the jury as a whole. It would serve no purpose to discuss these criticisms in detail. They are highly technical objections to matters of phraseology, or they are based on an erroneous construction of the statute under which the information was framed. We have read the charge in full and have read the entire record. We are satisfied that the jury was fully and fairly instructed; that the appellant was accorded a fair and impartial trial, and that no error complained of was in the least degree prejudicial.

Judgment and order affirmed.

Koford, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 12, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 25, 1929.

All the Justices concurred.