[Crim. No. 2261. Second Appellate District, Division Two.—January 21, 1933.]

THE PEOPLE, Respondent, v. ALEX SUSOEFF et al., Appellants.

Joseph W. Ryan and Frank J. Ryan for Appellants.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, Buron Fitts, District Attorney, and William R. McKay, Deputy District Attorney, for Respondent.

WORKS, P. J.—Defendants were charged jointly, in three counts, with the commission of as many burglaries in Pasadena on one and the same day. Susoeff and Kudenoff, who, only, are before us on appeal, were both acquitted under the first and second counts and convicted of second degree burglary under the third. The appeal is from the judgment and from an order of the trial court denying the motion of appellants for a new trial.

Appellants contend that the *corpus delicti* was not proven. The crime in question, laying aside the point whether appellants were guilty of its commission, consisted in a breaking into an automobile agency in Pasadena, forcing open a safe in the office of the concern, and abstracting money therefrom. There was evidence, according to the statement of facts contained in the brief of appellants, that when the complaining witness returned to his office immediately after the date fixed in the information he found that "the hatchway leading to the roof of the building had been torn off", that "the combination of the safe in the office had been knocked off" and that "the safe lock had been driven in and the contents of the safe were strewn over the office floor". The burglary was committed on an Easter Sunday. The brief of appellants informs us that

an employee of the automobile concern, on Saturday evening, "put the cash box of the company containing about $77.00 in cash and several checks in the safe and locked it"; that on arriving at the office of the agency at about 8:30 on Monday morning "she made a search for the money and checks, which she had previously left in the safe, and found that the money was missing". There was of course evidence, and this is stated in appellants' brief, that no permission had been given appellants to enter the building or the safe. Appellants themselves thus certify to us the proof that a crime had been committed. Such proof is sufficient to establish the *corpus delicti* (*People* v. *Rodway*, 77 Cal. App. 738 [247 Pac. 532]; *People* v. *Locurto*, 97 Cal. App. 185 [275 Pac. 462]).

The first point actually stated by appellants is that the evidence was insufficient to justify the verdict. It is as a part of this point that question is raised concerning proof of the *corpus delicti*. Having disposed of that subpoint we now proceed to determine whether the evidence is sufficient to show the agency of appellants in the commission of the crime. In stating the evidence it will be understood, in the absence of specific assertion to a different effect, that the testimony refers to the Sunday on which the offense was perpetrated. Following the method employed in respondent's brief we shall first state separately the testimony directed against each appellant.

We shall begin with Susoeff. One Spalding testified that at about 4 o'clock in the afternoon, from the fire-escape of a building adjoining the automobile agency building, he saw Susoeff on the roof of the latter, which was known as the Don Lee Building. "Q. What was Susoeff . . . doing at the time? A. He was just—just when he was going into the building, when he first went across the roof; I just saw his head going over the roof, walking, so I didn't recognize him at that time. Q. Later did you have occasion to see this defendant? A. Yes, I saw him when he came out of the Don Lee Building, on top of the roof again. Q. Where was he when you first saw him the second time? A. The second time, just coming out of the trapdoor in the roof; he just came out of the door and was going back to the back end of the building and going down a tree which was his means of getting off from the roof. Q. Did you see anything

at that time in the hands of Mr. Susoeff? A. There seemed to be a roll of clothing or a bag of some kind. Q. After the defendant Susoeff got on the roof and on the tree, what did he do at that time? . . . A. Just as he was going down the detectives arrived at the front of the building and started to run him down; I had called them in the meantime. Q. What did Mr. Susoeff do at that time? A. Well, he was just going over the roof to the tree when I started; I climbed down the fire-escape and motioned to the police officers that he was going behind the back of the building, to run, that they would have to run around on El Molino and Green to get back of the building. I motioned them to go that way, which they did. Q. How close were you to Susoeff at that time? A. I was just a little above; I was on the fire-escape . . . right up to the roof of the— Q. About how many feet were you from him? A. I would say 8 or 10 feet above and 3 or 4 feet off, just sort of an angle. Q. What did Mr. Susoeff do at that time? . . . When he got to the tree; when he was in the tree what did he do? A. He just started down the tree when I came down the fire-escape and I lost his view then.'' On cross-examination the witness said he did not see the man on the roof open the trap door, but ''he was closing it, just as he was coming out. . . . Q. You saw him come out of the trap door? A. Well, not just then; in the act of closing it.'' He also said that the Don Lee Building is a one-story structure.

Charles E. Ewing, a police officer, saw Susoeff at about 4:40 in the afternoon. ''I saw him first when he came out of a semi-alley back of the Don Lee Building. . . . Q. Who was with Mr. Susoeff, or was he alone at that time? A. At the time John Dobrinin, the other defendant. Q. What was Mr. Susoeff doing at that time? A. He came out of the alley; he was coming on Green street in the same direction that I was coming, and at that time he turned and ran and jumped the fence. . . . After he jumped the fence he disappeared in back of the house. Q. Did you see him again? A. Not that day.''

Frank Katzenberger, a police officer, testified that he had a conversation with Susoeff after his arrest, during which the latter said that he was not in Pasadena on Sunday afternoon but that he was at the beach.

It now becomes proper to state the testimony pointed directly at Kudenoff. Officer Ewing testified that he saw this appellant "on Green street, opposite the Don Lee Building" at "approximately 4:30 in the afternoon", and that Kudenoff was walking along that thoroughfare. This was about five or ten minutes after the witness had seen Susoeff come out of an alley and run and jump a fence, as related above. Either immediately before or immediately after Ewing saw Kudenoff—the evidence is not clear which —the officer saw a yellow car standing at the curb on a street just off Green Street and a block from the Don Lee Building. This car was the property of Kudenoff. Ewing saw it at the same place half an hour after first observing it, but when he visited the place two hours later it was gone. It was the theory of the prosecution that this vehicle was the "get-away" car for the three defendants, and this theory finds some support in the evidence—that which has already been recited and that which is now to be noticed.

Kudenoff was arrested a few days after the burglaries in Pasadena had been committed. Soon after the arrest Officer Katzenberger and other police officers had a conversation with Kudenoff. Katzenberger said that the conversation was "with regard to money taken out of the several burglaries in Pasadena", and that he said to Kudenoff, "we would like to recover . . . all the money out of the particular jobs that were committed in Pasadena". He then immediately referred to a loss of about $500 which had been suffered by the complaining witness under one of the counts of the triple charge not in question on this appeal. Immediately after that reference he said to Kudenoff, "I know that you got it, Bill; you got it ditched some place, or cached some place; we want to get it and return it to Pasadena." He also said to Kudenoff that Dobrinin had told him that "he [Kudenoff] had money" at his place of abode and that "he [Katzenberger] was going out to get it". After a conversation which "lasted quite a while" Katzenberger remarked, "Well, let's go." Kudenoff said, "Let's go where?" The officer responded, "Down to the house," and Kudenoff said, "All right." That appellant, Katzenberger and two other police officers then proceeded to the prisoner's home. Katzenberger testified that "the Dobrinin boy [this defendant was a minor] told us, in fact, where the money was sup-

posed to be; it was back of the bed in a trunk; and another trunk sat in front of it". Search was made when the quartet reached Kudenoff's home, but the officers found only a small purse containing about $13: Katzenberger remarked, "That is not all the stuff, that is not all the dough." Kudenoff responded, "Well, it is stuck underneath this tray," but when the officer examined the place indicated he found nothing. Kudenoff then said, "Well, somebody beat us to it."

It will at once be observed that this item of evidence did not relate, by specific statement, to money which was the avails of the burglary committed at the Don Lee Building. Katzenberger did say to the jury, however, that the conversation which occurred prior to the trip to Kudenoff's home related "to money taken out of the several burglaries in Pasadena", and he referred to the "particular jobs" committed in Pasadena. There were three of these, as the jury well knew, and the trial body was not only justified in inferring but could hardly have avoided inferring from the officer's statements that all that Kudenoff said and did during and after the conversation had a bearing upon the possibility of his guilt under the Don Lee Building charge, as well as under the other two. Katzenberger's reference to the $500 lost in one of the other burglaries could not alter this situation. No attempt was made during the cross-examination of Katzenberger to show that the conversation and Kudenoff's conduct following it had no reference to the charge under count three.

F. M. Hoeflen, who operated a service station in Pasadena, testified that he saw Kudenoff near his place of business between 1 and 3 o'clock in the afternoon of the Easter Sunday upon which the burglaries were committed, and that Kudenoff was then taking a drink of water from a drinking fountain.

Despite the testimony to the contrary, Kudenoff told police officers that he was not in Pasadena on the day of the burglaries but that he was at the beach.

We are convinced that the evidence was sufficient to support the verdict against each appellant, so much so that we find it unnecessary further to discuss the point. ██ It is to be observed that the evidence pointed either at Susoeff or at Kudenoff was, respectively, admissible against the other

under the law of conspiracy, and the jury was so instructed. There is also to be considered the attitude of Kudenoff when the accusatory statement of Dobrinin, hereafter referred to, was presented to him.

The trial judge read to the jury several instructions upon the law of conspiracy. Exception is taken to the giving of each of these, but solely upon the ground that the evidence failed to show the existence of a conspiracy. It is well settled that such an illicit combination may be shown by circumstantial evidence as well as by direct proof of an agreement between two or more persons to commit an unlawful act. In the present case we are unable to perceive how the jury, with eye and ear attentive to the proper discharge of duty, could have found otherwise than that a conspiracy between the three defendants was in existence.

Exception is taken to the refusal of the trial judge to give the following proffered instruction: "You are instructed that the statement of Wm. [*sic*] Dobrinin read into the record as an accusatory statement is not to be taken by you as true with respect to its contents but only as an accusation directed to the defendant William Kudenoff to which he would reply when accused." It is obvious that in the part of this language following the words "but only" the draughtsman did not say what he intended. He surely did not purpose having the judge tell the jury positively and finally that Kudenoff "would reply"—it were better if he had said "would have replied"—to the accusatory statement, yet that is just what is imported by the words he employed. No mortal man, and especially a judge speaking to a jury, could properly and truly have said whether or not Kudenoff would have replied to the statement if it were presented to him. Indeed, it is shown by the testimony that he was silent when that event actually occurred. The latter part of the instruction asked was wrong, was in fact unintelligible and confusing to the jury, especially as that body had listened to the testimony as to what Kudenoff really did when the accusatory statement was read to him. The request for the instruction as a whole was, then, improper, and the proffer was on that ground alone rightly refused, although respondent makes additional and effective objection to it. At the close of the evidence, on an afternoon, counsel for appellants stipulated that on that day

"your honor may read all the instructions to the jury with the exception of one instruction; that instruction, as to reasonable doubt, to be given in the morning". Thereupon the judge read all instructions which had been presented to him and allowed—the one now under examination not being among them—except the instruction on reasonable doubt. The proffered instruction as to the accusatory statement was presented "in the morning". The instruction on reasonable doubt was then given. Other objections are also made by respondent to the proffered instruction.

The so-called accusatory statement of Dobrinin was admitted in evidence as to Kudenoff, together with testimony concerning the latter's attitude upon the presentation of the statement to him. Appellant Kudenoff contends that the admission of the statement was improper. There was testimony that when the paper was read to him Kudenoff said "not a thing", "just said nothing", "never said anything". The statement was properly admitted in connection with the showing as to Kudenoff's silence, and as a basis for the showing (*People* v. *Gordon,* 61 Cal. App. 98 [214 Pac. 276]; *People* v. *Bringhurst,* 192 Cal. 748 [221 Pac. 897]).

Some other points are made by appellants, but they are either answered by what we have said or they do not merit a separate consideration.

Judgment and order affirmed.

Craig, J., and Stephens, J., concurred.